## PEABODY v. PHELPS.

| 9 | 213 |
|----|----|
| 131 | 608 |

The time within which a notice of motion must be filed to set aside the report of a referee, and a statement be prepared for that purpose, will depend on the character of the reference; whether it be special, to report the facts, or general, to report upon the whole issue.

In the former case, the report has the effect of a special verdict; in the latter, it stands as the decision of the Court, and judgment may be entered thereon, exceptions taken and reviewed, as if the action had been tried by the Court.

Upon facts found, whether by report of the referee, or special verdict of a jury, the direct action of the Court must be invoked before judgment can be entered. Hence, the time within which the notice of motion to set aside the report or verdict must be given, should date from the filing of the report, or the rendition of the verdict.

But where an action is tried by the Court without a jury, or the whole case is referred to a referee, judgment follows immediately as a conclusion of law upon the facts found, and the time within which the notice of the motion should be made, dates from the entry of the judgment.

A party is not bound by a judgment rendered in an action of ejectment where he has not received legal notice of the action. Such judgment is not evidence against him of paramount title in the plaintiff in ejectment. Mere cognizance of the existence of the action is not legal notice. To be available, the notice must apprise the party, whose rights are to be affected, of what is required of him, and the consequences which may follow if he neglects to defend the action.

An action for a false and fraudulent representation as to the naked fact of title in the vendor of real estate cannot be maintained by the purchaser, who has taken possession of the premises sold, under a conveyance with express covenants.

All previous representations pending the negotiation for the purchase are merged in the conveyance. The instrument contains the final agreement of the parties, and by it, in the absence of fraud, their rights and liabilities are to be determined.

If a party takes a conveyance without covenants, he is without remedy in case of failure of title; if he takes a conveyance with covenants, his remedy, upon failure of title, is confined to them.

APPEAL from the District Court of the Seventh Judicial District, County of Solano.

This was an action brought to recover the sum of $4,500, with interest, the purchase-money for a lot of ground in the city of Benicia, on the ground of false and fraudulent representation as to the fact of title in the vendor at the time of sale. The facts are as follows:

In October, 1849, the defendant sold and conveyed to the plaintiff the lot of land for $4,500. Before, and at the time of the sale, the defendant represented to the plaintiff that he had the lot, or was the owner of the lot, and had purchased it from Thomas O. Larkin. The deed of conveyance from defendant to plaintiff, after reciting the consideration-money, etc., is as follows: "Have granted, bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey, unto the said William F. Peabody, his heirs and assigns, for ever, all my right title and interest and estate in and to a certain tract or parcel of land." * * * * * "Which said tract or parcel of land was derived to me, the said Bethuel Phelps, from

Thomas O. Larkin, of Monterey, by deed bearing date —— day of ———, A. D., one thousand eight hundred and forty-nine, reference being had to said deed now on record in the office of the alcalde of said Benicia. To have and to hold the above granted and bargained premises, with all the privileges and appurtenances thereof, to the said William F. Peabody, his heirs and assigns, to his and their own use and behoof for ever, and I, the said Phelps, do, by these presents, covenant to warrant and defend the said William F. Peabody, his heirs and assigns, in the title to said premises, from me and my heirs and assigns, for ever."

Under this deed, plaintiff entered into possession of the premises and made valuable improvements thereon. In January, 1851, plaintiff conveyed the premises to Henry G. Wetmore, who in October following conveyed the same to John T. Peabody. In February, 1853, Thomas O. Larkin sued the Peabodys in ejectment for the premises, and in May following recovered judgment in such action for the possession. In January, 1855, execution was issued, under which proceedings were taken, which, it was insisted, amounted to an eviction. In the Larkin suit the defendant was not made a party, nor had he any notice of it, other than the knowledge that such an action was pending. This cause came on for trial, and, by agreement of counsel, was referred to E. W. F. Sloan to find the facts and report a judgment thereon. On the eighth day of March, 1856, the referee reported a judgment for plaintiff for the amount claimed, and judgment was entered on that day, which was in vacation. The defendant appealed from the judgment; and, at the January Term of this Court, 1857, the judgment was reversed, on the ground that it was rendered in vacation. At the following March Term of the District Court of the Seventh Judicial District, in and for Solano county, on motion of plaintiff's counsel, and on filing the *remittitur* in this case from the Supreme Court, the report of the referee was confirmed, and, on March 28, 1857, judgment was entered for plaintiff. Defendant's counsel then obtained from the Court below an order directing the referee to certify the evidence taken before him, and gave notice of motion to set aside the report. The evidence being returned by the referee, a statement was prepared, and the motion made, which being denied, the defendant appealed.

*John Currey* for Appellant.

As preliminary to the argument of the case, it is deemed proper to notice certain objections suggested on the part of respondent, as technical impediments to the consideration and decision of this case upon its merits.

The position of respondent, to the effect that there is no means or mode by which the decision and report of a referee may be

reviewed after his report is filed, and especially after the Court has entered judgment thereon, is fraught with consequences repugnant to every sense of justice; and it would seem unnecessary to do more than state the proposition and invite attention to its consequences, in order to obtain from this Court its prompt judgment that such is not the law.

This position the appellant insists has no resting-place, either in principle or authority.

In principle, such position is fallacious, because by its adoption as a rule, the appellant would be without remedy, however just might be his cause of complaint.

To say that a party must file his notice of motion to set aside a decision, within two days after the trial in fact, which in many cases is before the decision is published, is preposterous; and an attempt to prove by argument that the rule is otherwise, would be as idle as an effort to establish the truth of an axiom; and to hold that the appellant should have filed his notice of motion to vacate the judgment and the decision whereon it was alleged to be based, before the judgment was rendered on the twenty-eighth of March, 1857, would be requiring the appellant to presume, at his peril, that the judgment would be adverse to him, and that the Court would confirm the report of the referee as to his conclusions of law, though entirely unwarranted by the facts found.

Upon authority, the respondent's position here noticed is equally untenable.

In Sloan v. Smith, 3 Cal., 407, the Court say : "On filing the report, judgment is entered as a matter of course, and the only mode in which a party can take advantage of it is by moving to set aside the judgment, as on a motion for a new trial."

In Headley v. Read, 2 Cal., 325–6, the Court say : "Upon the report of a referee under the statute; if it contain sufficient on which to base a judgment, it is the duty of the Court below to enter judgment in accordance with the report, as far as it concerns the matters referred, and it has no right to entertain any objections whatever. After the rendition of the judgment, the Court may award a new trial, and set aside the report," etc.

In Lurvey v. Wells, 4 Cal. R., 106, the Court, in referring to Baldwin v. Kramer, 2 Cal. R., 582, say : "The facts of the case showed that no notice or motion for a new trial had been filed until several months after the close of the term at which the judgment was rendered."

From these authorities, it would seem the notice of motion to set aside the report and judgment, and for a new trial, can not properly be filed until after judgment on the referee's report ; and that, after the rendition of the judgment, the Court may award a new trial and set aside the report; and it further appears, inferentially, from the case of Headley v. Read, that no

judgment can properly be entered on the report of a referee, unless it contain sufficient on which to base a judgment.

The second objection, insisted on by respondent, is that by the lapse of time from the placing of the referee's report on file, (March 8, 1856,) until the entry of judgment thereon by the Court (March 28, 1857,) the appellant lost his right to move to set aside the report and the judgment thereon rendered, and also all right to a statement of the evidence and objections and exceptions taken before the referee.

This objection is obviated by the authorities before cited, and also by the fact that until judgment was rendered on the report, by the Court, the appellant could not move in the matter. The circumstance that appellant did attempt, prematurely, to have the judgment entered by the clerk of the Court in vacation (March 8, 1856,) as upon a motion for a new trial vacated, cannot affect the appellant's right to move upon the rendition of judgment upon such report, by a Court of presumed authority.

The clerk's judgment was a nullity, and, as such, was reversed by this Court; but the judgment of the District Court, of March 28th, 1857, has the force and effect of a valid judgment, until reversed or otherwise vacated. The question here presented is: Did the law, upon the rendition of such last-named judgment, afford to the appellant the right to move to set aside such judgment? And did the same law secure to him the right to an exhibit, by a statement of the truth, and the whole truth, of the matter and process through which he was condemned?

The respondent's third objection is to the effect that after the referee's report was filed, his powers in the premises ceased—that as referee he was no longer under the authority of the Court by virtue of whose appointment he made such report.

This position, the appellant insists, is without reason for its basis, and is contrary to the practice of the Courts in such cases. The referee remains such until the case is finally determined: and if the cause be reversed and remanded for a new trial, he must try it again, unless discharged by the Court, of his office as referee. This was so held in Shuart v. Taylor, 7 How. Pr. R., 251. To the same effect is Goodrich v. Marysville, 5 Cal., 530. These authorities establish that the referee remains subject to the authority of the Court until the cause is determined.

The last objection of respondent which will be noticed here, is that the case at bar has been fully adjudicated, and should be regarded as a matter res adjudicata.

If this be so, by the order of the Court below, made June 26, 1856, then the judgment rendered March 28, 1857, was coram non judice, and should be reversed; for such order affirming the judgment before then rendered on the report of the referee, together with the judgment so affirmed, was by this Court reversed.

Peabody v. Phelps.

On the part of the appellant it is deemed unnecessary to say more in respect to respondent's objections above noticed.

There was but one covenant in the deed of October 29, 1849, which was, to warrant and defend the grantee, his heirs and assigns, in the title to the premises, from the grantor, his heirs and assigns, for ever. This is a limited covenant expressed. Sanders v. Betts, 7 Wend., 287. In such cases the rule is as expressed in Frost v. Raymond, 2 Caine's R., 192, "that an express covenant will do away with all implied ones." The affirmative covenant is negative of what is not affirmed. *Expressum facit cessare tacitum*, enunciates one of the first principles applicable to the construction of deeds. Apsdin v. Austin, 5 Adol. and El. N. S., 682; Dunn v. Sayles, Ib., 691.

In the creation or transfer of an estate of freehold, no covenant for title is implied at the present day by the common law, except perhaps where the word give may happen to be employed, and it may be doubted whether such an effect would be given even to this word. Rawle on Cov. for Title, 361; Whitehill v. Gotwalt, 3 Penn. R., 326; Allen v. Sayward, 5 Greenleaf R., 230; Pickett v. Dickens, 1 Murphy, 346; Deakins v. Hollis, 7 Gill. and John., 311.

By the deed of the defendant to the plaintiff, the grant was of all right, title, interest, and estate of the grantor, in the premises therein described. Where the grant is thus restricted, even though followed by unlimited covenants of seizin and warranty, such covenants can be taken in a limited sense only, and are to be restricted to the grantor's right, title, interest, and estate, whatever that may be. The covenants only attach to the right, title, and estate, conveyed. This was so held in Sweet v. Brown, 12 Met., 175; Blanchard v. Brooks, 12 Pick., 57; Allen v. Holton, 20 Pick., 463; Wyman v. Harmon, 5 Grattan, 162. See, also, Rawle on Cov. for Tit., 396, and notes.

The plaintiff's complaint does not count on any breach of covenant, nor is it pretended that any covenant in the deed has been broken.

There being no complaint of the breach of any covenant, the alleged fraud is the gist of the plaintiff's action.

Had the defendant any right or interest in the premises described in the deed of October 29, 1849? If he had, the pretence of fraud and damage consequent thereon must fail the plaintiff's purpose.

On and before the date of the deed mentioned, the defendant was in possession of the premises. Under such conveyance the plaintiff entered into the possession of the premises, and has continued there since, without interruption. This being so, the defendant had a right, title, interest, and estate therein, which he could convey; and there is no evidence in the case that he

undertook to convey any greater interest in the property than he had therein.

Lands and tenements, held by no stronger tenure than possession, may be the subject of sale and transfer. Johnson v. Rickett, 5 Cal. R., 218; Norton v. Jackson, Ib., 262; Parker v. Crane, 6 Wend., 647.

The plaintiff received of defendant the possession of the property. He purchased defendant's right, title, interest, and estate therein, and nothing more; and, as was said by Justice Bronson, in Whitney v. Lewis, 21 Wend., 133, "For aught that appears, he knew as much about the title as the defendant, and the one party may have been as willing to take the deed and trust to the covenant, as the other was to give it."

In the conveyance mentioned, reference was made to a deed from Larkin to defendant, as recorded in the office of the alcalde, at Benicia. This, on the part of the respondent, it has been assumed, is patent of a fraudulent intent of defendant; but it will be observed, that the subject-matter of the sale and purchase was there; and the means of ascertaining the truth respecting the matter recited, was immediately accessible to the plaintiff; and the lapse of time from May to the twenty-ninth of October, wat ample for the examination of such record. Such matter, however, was not material; had it been, the investigation would have been made.

In 1 Sugden's Vend. and Pur., p. 2, pl. 4, it is laid down that, "If the purchaser was, at the time of the contract, ignorant of the defects, and the vendor was acquainted with them, and did not disclose them to the purchaser; yet if they were patent and could have been discovered by a vigilant man, no relief will be granted against the vendor. * * *Vigilantibus non dormientibus jura subveniunt,* is an ancient maxim of our law, and forms an insurmountable barrier against the claims of an improvident purchaser."

"Even a warranty will not cover defects which are the objects of the senses." 2 Kent, 484; 2 Caines, 202; 10 Vesey, 507.

"The common law affords every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indiference to the ordinary and accessible means of information." 2 Kent, 285.

On the part of the plaintiff, several cases were cited before the referee and in the Court below, to maintain that a purchaser of land may, in case of failure of title, recover against the vendor the consideration-price, upon an allegation of fraud.

The case of Waddell v. Fosdick, 13 John., 325, was an action on the case for a deceit in selling to the plaintiff, for a valuable consideration, land which had no existence. The Court held that the purchaser so defrauded, as appeared by the facts of the

case, had a right to treat the deed as a nullity, and might maintain an action on the case for the deceit.

In Monell and Weller v. Colden, 13 John., 402, the defendant owned a lot of land in Newburgh, bounded on the east by Hudson River, and to induce the plaintiffs to purchase and give an enhanced price for it, falsely and fraudulently affirmed that there was appurtenant to the land a pre-emptive right, in the riparian owner, to a grant of land under the water of the river adjacent; and to which the plaintiffs would be entitled if they purchased the lot. The declaration averred these facts, and that giving faith to such affirmation, the plaintiffs were induced to purchase the lot, at a large price—that the land, without this privilege, would not be worth more than $500, but that with the privilege, it would be worth $30,000. To this declaration the defendant interposed a general demurrer. After a recapitulation of the facts averred, the Chief Justice said : " These facts being admitted by the demurrer, as true, I cannot see why they do not show a good cause of action. * * * According to the declaration, the defendant knowingly and falsely misrepresented the fact with respect to the land under the water. * * * The false representation was not in respect to any matter to be included in the deed, but with respect to a privilege, which the plaintiffs were to acquire in consequence of owning the land on the shore adjoining the river."

By these authorities it appears that the representations made were false and fraudulent; and that they were of matters collateral to the subject of sale. In Whitney v. Allaire, 1 Cow., 313, Bronson, J., said : "Actions have been sustained where the deceit was in relation to some collateral thing, as the rents or other profits derived from the land, things appurtenant to it, the incumbrances upon it, the location, quality, or condition of the land, what the vendor paid for it, and the like." The learned Judge then cites many authorities, and says : "Some of these cases are open to observation ; but it is enough for the present to say that in none of them was the false representation on the naked fact of title." He then comments on several of the cases cited, and after stating that he did not find that an action for a fraudulent representation by the vendor of the title in himself, had ever been maintained, he says : " The learned Judge, who delivered the opinion of the Court in Leonard v. Pitney, (5 Wend., 30) evidently thought such an action would not lie ; and the case of Roswell v. Vaughn, (Cro. Jac., 196) as understood by Lord Holt and Powell, J., in Lysney and Selby, (2 Ld. Raym., 1119) tends to the same conclusion. It is a strong argument against the action that no precedent for it has been found.

The judgment of Larkin v. Peabody & Peabody, and the proceedings had therein, was not competent evidence, in the action at bar, to determine, either that Larkin had a paramount title in

said premises, or that the appellant had no right, title, or interest therein.

If the appellant could have become concluded by the Larkin judgment, it must have been upon the hypothesis that he was privy to the action, and as such, though not a party to the record, had its defence as much under his control, as if he had been a party thereto. Upon this point, it is apprehended the same principle must govern, in an action like the case at bar, as does in actions brought by a grantee, after eviction by title paramount, against his grantor upon breach of covenant of seizin or warranty.

In analogy to the ancient practice of vouching to warranty, it is well settled in this country in most, if not all of the States, that, in general, upon suit being brought upon paramount title against one who is entitled to the benefit of a covenant of warranty, he can by giving proper notice of this action to the party bound by such covenant, and requiring him to defend it, relieve himself from the burden of being obliged afterwards to prove, in an action on the covenant, the validity of the title of the adverse claimant. Rawle on Cov. for Title, 198, 199.

In Miner v. Clark, 15 Wend., 425, the action was on a covenant of warranty of title in a deed of lands from which the plaintiff was evicted. On the trial this question arose. The plaintiff proved that when the ejectment-suit was commenced against him, by virtue of which he was evicted, he gave verbal notice of the suit to his grantor, and requested him to attend to the defence. The notice to the effect of the one given was agreed upon by the Court as necessary to bind the grantor, by the judgment in the ejectment-suit; but the court were divided upon the question whether or not such notice must be in writing.

Justice Bronson was of opinion that the notice should be in writing, as it was to have the effect of a legal proceeding, and that as was said in Gilbert v. The Columbia Turnpike Co., 3 Johns. Cas., 107, "a notice in legal proceedings means a written notice." The learned Judge says: "If the notice is to have any influence upon the right of the party, it should be given in such form as fully to apprise the person receiving it of what is required of him, and the consequences which are to follow, if he neglects to take upon himself the defence of the suit." In the same case, Ch. J. Nelson said: "If notice of the suit had not been given to the defendant, it would have behooved the plaintiff to have shown that a full defence was made, and that the defendant, if notice had been given, could not have defeated a recovery."

It cannot be said that because the appellant was cognizant of the prosecution of the ejectment-suits of Larkin, that therefore he had, in the legal sense, notice thereof, because knowledge in such cases is not notice—the notice in such case being to advise the party to be charged with the consequences of the judgment

that may be recovered, what has been done, and what he is required to do.

The appellant respectfully insists that he should not be held concluded by a judgment recovered in an action to which he was not a party, and against which he had not the power to defend. If he had no other right, title, or interest in the property than that of a naked possessor, such fact, if conceded, could not alter his right to contest the asserted claim of Larkin, who could only recover by virtue of superior title. If the appellant could have controlled the defence in the ejectment-suit, the result might, and probably would have been, to have defeated the claim of Larkin; and thus would have been secured to the defendants therein the quiet possession of the property—a possession that might have ripened into a perfect title. Norton v. Jackson, 5 Cal., 262; 2 Black. Com., 195-6; Beddoe's Ex'r. v. Wadsworth, 21 Wend., 124.

*Whitman & Wells* for Respondent.

The respondent's counsel submit that the only question before the Court is the propriety of the action of the Court below, in the entry of judgment on the report of the referee, March 28, 1857; that the reversal of the judgment originally entered, could not operate to re-open the case beyond the error indicated by such reversal; that the right of appellant to a statement of the evidence, etc., had previously been lost, and that such right was not dependent on the time of entry of judgment, but on the trial of the cause.

The several decisions of this Court have fully settled the analogy between trial by referees and by the Court or a jury. Tyson v. Wells, 2 Cal., 122; Walton v. Minturn, 1 Cal., 405; Headley v. Reed, 2 Cal., 322; Sloan v. Smith, 3 Cal., 406; Phelps v. Peabody & Co., January Term, 1857.

The only period at which the defendant had a right to a statement was by giving his notice two days after the trial, and filing statement five days thereafter. Under the Practice Act of 1850, the party might apply for a new trial within five days after judgment, but this was changed in the act passed April 29, 1851, and the present rule adopted, which fixes the trial as the point when the right of a party to new trial accrues.

In the absence, then, of statute regulation or a rule of the Court, it might be doubted whether the party could date his time from the filing of the report. Were the question material, it might be insisted that his stipulation should control.

Assuming, then, that on the filing of the report, at farthest, the right of the party to proceed for a new trial first accrues, it follows that the lapse not only of time, but two terms of Court, would bar any action in relation to a statement.

It has been repeatedly held by this Court, that after the expiration of the term of the Court wherein judgment was rendered,

the Court loses all control over the cause, unless the same be saved by some proceeding taken at the term. Baldwin *v.* Kramer, 2 Cal., 583; Survey *v.* Wells, 4 Cal., 106; Morrison, Adm'r, *v.* Dapman et al., 3 Cal., 255.

In Baldwin *v.* Kramer, the Court say : " We hold that after the expiration of a term of the District Court, no power remains in it to set aside a judgment, and grant a new trial ; a different doctrine would lead to great uncertainty, and possibly to gross abuse. There must be a time when the rights of the parties are to be considered as determined, and for litigation to cease, and for this purpose the law has wisely fixed the rule here indicated."

So, in J. Morrison, Administrator, *v.* Dapman, cited above, the Court held that though the Court might make an entry conform to the judgment entered, it could not after lapse of a term, open on motion and render a new judgment, saying : " Such a practice is too loose, and would give rise to too much uncertainty."

So, in Branger *v.* Driard and Chevalier, decided at the present term of this Court, applying these principles to a statement, the Court say :

" While the term lasts, the Court has power to amend the record. After the term has passed, the record cannot be amended unless there is something in the record to amend by."

The question in the case last cited, was whether the Judge could set aside or revoke his certificate to a statement.

In this case, however, the powers of the referee are involved. On the return of his report to the Court his functions had ceased, his report became the record; admitting that the record might have been amended or completed by the addition of evidence, such amendment or addition could only have been made within the term succeeding the report. The evidence is no part of the report necessarily. Sloan *v.* Smith, 3 Cal., 406; Headley *v.* Reed, 2 Cal., 322.

The rule and policy that debars a Judge whose office and power continue, from disturbing proceedings after the lapse of a term, must apply with greater force to the case of a referee, whose office and functions determine on the rendition of his report. If required to send up evidence by a subsequent order, his duties under that order are merely clerical.

The defendant having heretofore appealed from the judgment of March 8, 1856, the decision of the Court on such appeal has become the law of the case. All prior questions merged in such appeal.

The motion for new trial, of which the grounds were filed March 15, 1856, was denied June 26, 1856. No appeal having been taken therefrom, such denial must be held conclusive.

The appeal, of which notice was given November 1, 1856, was from the judgment only.

In Phelps *v.* Peabody et al., January Term, 1857, the action

of the Court below, and of the parties in reference to the statement and the motion for a new trial was before the Court and passed upon.

The matter has become *res adjudicata* by the denial of motion for new trial in the Court below, and by the final decision of this Court in Phelps *v.* Peabody et al., 7 Cal., Jan. Term.

The judgment on appeal has become the law of the case. Clary *v.* Hoagland, 6 Cal., Oct. Term; Simpson *v.* Garwood, 7 Cal., July Term.

In Clary *v.* Hoagland, the case had been brought from the County Court of Yolo county, through the District Court, into the Supreme Court. After a decision, it had been decided that the District Court had no appellate jurisdiction, and the point was presented to this Court whether the former judgment was conclusive on the rights of the parties.

The Court say: " It is well settled, that when a case has been once taken to an Appellate Court, and its judgment obtained on points of law involved, such judgment, however erroneous, becomes the law of the case, and can not, on the second appeal, be altered or changed."

So, in Simpson *v.* Garwood, 7 Cal., July Term, which was an application to modify the judgment of the Appellate Court so as to allow a new trial in the Court below, such order was refused, on the ground that the record disclosed no facts to warrant it.

The action of the Court below, in rendering judgment for the plaintiff on the report of the referee, March 28, 1857, was regular. The opinion of this Court on reversal having indicated the error, it was competent for the Court below to correct it. Stearnes *v.* Aguirre et al., 7 Cal., April Term; Holland *v.* City of San Francisco, 7 Cal., July Term; Phelan *v.* Supervisors of San Francisco, 7 Cal., January Term.

In Stearne *v.* Aguirre et al., the rule is thus laid down : " We are now called upon, for the first time, to determine whether a simple judgment of reversal is a bar to further proceedings in the same suit, and as the point has never before been adjudicated by this Court, and we have no rule of Court or of law which would control our judgment in the premises, we think it would be more just to follow the rule of the common law on this subject, by which the parties in this suit have in all probability been governed. At common law, the Appellate Court either affirms or reverses the judgment upon the record before it. The opinion which is rendered, is advisory to the inferior Court, and after the reversal of an erroneous judgment, the parties in the Court below have the same right that they originally had."

In Holland *v.* San Francisco, which was an application to modify the judgment of the Appellate Court, so as to admit of a new trial, the language of the Court is as follows:

" There having been no objection made by either party to the

finding of the facts, the same is conclusive upon both, and we have no power to order a new trial as to such finding. The only question which this Court could review, was the alleged error in the conclusion of law from the facts found, and the only effect of a reversal is to correct the error complained of. If this Court should send the case back to the Court below, the effect would be the same. 'That Court could not go beyond the error excepted to,' and could only correct its conclusion of law from the facts found. When this error should be corrected, the defendant would of course be entitled to judgment."

The appeal in this case was from the entry of judgment, and the decision of the Appellate Court indicated Chichester v. Smith, 1 Cal., 90, and Coffinberg v. Horrell, 5 Cal., as its authority for reversal. By reference to these cases, it will be seen that the real ground for reversal was the entry of a judgment on the report of a referee out of term. The motion for a new trial not being dependent on or any way connected with the entry of judgment, and not having been made the subject-matter of appeal, the reversal could not remit the defendant any rights in relation thereto.

It was therefore competent by entry of judgment at regular term of the Court, to correct the error complained of, and that having been done, counsel for respondent respectfully submit that they are entitled to an affirmance of such judgment in this Court.

FIELD, J., delivered the opinion of the Court—TERRY, C. J., and BURNETT, J., concurring.

The time within which a notice of motion must be filed to set aside the report of a referee, and a statement be prepared for that purpose, will depend upon the character of the reference; whether it be special, to report facts, or general, to report upon the whole issue. In the former case, the report has the effect of a special verdict; in the latter, it stands as the decision of the Court, and judgment may be entered thereon, and the decision be excepted to, and reviewed, in like manner as if the action had been tried by the Court. Upon facts found, whether by report of the referee, or special verdict of a jury, the direct action of the Court must be invoked before judgment can be entered. Though the trial, in such cases has ended, judgment does not follow immediately as a matter of course; and the time within which the notice of motion to set aside the report or verdict must be given should be the same in the two cases, and date from the filing of the report or the rendition of the verdict.

But where an action is tried by the Court without a jury, the judgment follows immediately, as the conclusion of law upon the facts found. So, also, upon a report of a referee upon the whole issue; his decision stands as the decision of the Court. The

entry by the Clerk, in both cases, is a matter of course. Of the decision of the Court or referee, either upon the facts or law, the parties can have no knowledge until it is announced in the form of a judgment or a direction for its entry. It is seldom that the decision is rendered immediately upon the closing of the testimony. The necessity of stating, in writing, the facts found and conclusions of law, generally causes an interval of several days between the trial and judgment; and if the right to move to set aside the report or judgment dated from the trial, it could seldom be of any avail to the party against whom it is rendered.

In Headley v. Reed, (2 Cal., 325,) it was held that the District Court had no right to entertain any objections to the report of a referee until after the rendition of judgment thereon. The distinction between a reference to report special facts and a reference upon the whole issue does not appear to have been called to the attention of the Judge who delivered the opinion in that case, and we think its general language should be limited to cases where a judgment is ordered to be reported.

In Sloan v. Smith, (3 Cal., 406,) Murray, C. J., in considering the objection taken to the judgment, that the referees were not sworn, said, arguendo: "The order of the Court is to report a judgment; the evidence is not a necessary part. On the filing of the report judgment is entered as a matter of course; and the only mode in which a party can take advantage of it is by moving to set aside the judgment, as on a motion for a new trial."

It follows from the views we have taken, that the right of the appellant to make his motion and prepare his statement, dated from the entry of the judgment on the 28th of March, 1857, and not from the filing of the report or the trial before the referee. The judgment previously entered by the clerk in vacation was reversed on appeal, as a nullity, and could not affect the appellant's right to move, upon the rendition of judgment by the Court.

This disposition of the preliminary objection of the respondent brings us to the consideration of the case on its merits. The action is to recover damages for deceit in relation to the title of land sold and conveyed to the plaintiff. The alleged deceit consisted of representations by the defendant, made in a conversation with the agent of the plaintiff whilst negotiating for the land, that he was the owner of the property, and had purchased it of Thomas O. Larkin, which representations, it is averred, induced the purchase, and were falsely and fraudulently made. The conveyance to the plaintiff included a covenant to warrant and defend the grantee, his heirs and assigns, in the title to the premises from the grantor, his heirs and assigns, for ever; and with its execution, possession of the premises was delivered to the plaintiff, who remained in the undisturbed occupation of them

for years. In 1853, Larkin recovered judgment in an action of ejectment against the plaintiff and one John T. Peabody, and in January, 1855, issued execution for the possession of the premises. Whether an eviction was actually had under this execution it is unnecessary to determine; for the purpose of this appeal it will be assumed that an eviction took place. Of the action the defendant received no legal notice, and the judgment cannot, therefore, be evidence against him of a paramount title in Larkin. Mere cognizance of the existence of the action is not notice in the legal sense. To be available, the notice must apprise the party whose rights are to be affected, of what is required of him, and the consequences which may follow if he neglect to defend the action. (Miner v. Clark, 15 Wend.,425; Clark v. Baird, 7 Barb., 65.) Previous to the commencement of the ejectment-suit the plaintiff had conveyed the premises to a third party, and subsequent to the alleged eviction they were re-conveyed back to him.

The covenant in the deed to the plaintiff is a limited covenant expressed, in which all implied covenants are merged, even if it be admitted, which is a matter of doubt, that any covenants would otherwise be implied from the granting words of the conveyance. (Sanders v. Betts, 7 Wend., 287; Frost v. Raymond; 2 Caines, 192; Rawle on Cov. for Title, 361.)

The same doctrine prevails in the civil law. In the civil law there are two kinds of warranty—warranty in law or implied warranty, and warranty by deed. The parties may add to the warranty in law, "and they may likewise restrain the warranty in law; as if it be agreed that the seller should only warrant against his own proper act, and not against the rights of other persons, or that he shall only restore the price in case of eviction, and not the damages." (1 Domat's Civil Law, §§ 375, 376, 377.)

The question, then, presents itself, whether an action for a false and fraudulent representation as to the naked fact of title in the vendor of real estate can be maintained by the purchaser, who has taken possession of the premises sold, under a conveyance with express covenants. The precise question does not appear to have been directly decided. There are dicta in the reports, but we have been unable to find any adjudged case on the exact point. The deceit for which actions have been sustained has generally consisted of representations respecting the location, quantity, quality, or condition of the land sold, the privileges connected with it, the incumbrances upon it, or the rents or profits derived therefrom. In Wardell v. Fosdick, (13 Johns., 325,) the land which the deed purported to convey had no existence, and it was held that the purchaser might treat the deed as a nullity, and maintain an action for the deceit. The land not being in existence, there could of course be no possession, and no eviction, and consequently no remedy had upon the covenants,

and if the action could not have been maintained, the purchaser would have been remediless. In Monell *v.* Colden, (13 Johns., 396,) the representation related to a pre-emptive right, which the purchaser would acquire under the laws of New York, as riparian proprietor, to a patent of the adjacent land under the waters of the Hudson river, and the Court, in sustaining the action, said : " The false representation was not respecting anything to be *included in the deed*, but with respect to a *privilege*, which the plaintiffs were to acquire in consequence of owning the land on the shore adjoining the river." In Leonard *v.* Pitney, (5 Wend., 31,) the deed was a quit-claim, without covenants, and Marcy, J., said : " Doubts may well be entertained whether an action at law will lie for a deceitful and false representation of title, in the vendor of real estate. Such an action has not, as yet, I believe, been sustained, except it may be in some of the States where the same tribunal is possessed of equity jurisdiction, as well as the powers of a Court of common law." The question was, however, undecided, and the case passed off upon another point.

In Culver *v.* Avery, (7 Wend., 380,) the representation made was that the premises were clear of incumbrances, and that the purchaser would acquire a perfect title ; and Sunderland, J., in his opinion, adverted to the distinction made between a false representation relating to the title of the land conveyed, and a false representation relating to some collateral thing attached to it, and observed that the circumstance of the representation being made in reference to the *title* did not vary the principle upon which the action rested. The distinction was not taken by counsel, or required by the case, and the opinion on the point can be regarded only as a dictum of the Judge. In Whitney *v.* Allaire, (1 Com., 313,) Gardner, J., agreed in his views with Mr. Justice Sunderland ; but Bronson, J., in the same case, after citing several authorities, observed that in none of them was the false representation upon the naked fact of title ; that he did not find *that such an action had ever been maintained ;* and that it was a strong argument against the action that no precedent for it had been found, and said : " In the usual course of business, men insert covenants in their conveyance of real estate, when it is intended that the vendor shall answer for the goodness of the title, and it is easy to see that bad consequences may follow if the vendee shall be allowed to lay aside his deed, and have an action founded upon conversations about the title pending the bargain." The point was not settled by the decision, and the question may be still considered an open one in the Courts of New York. (See, also, Bostwick *v.* Lewis, 2 Day, 250, and Wade *v.* Thurman, 2 Bibb, 583.)

In Dobell *v.* Stevens, (3 Barn. and Cress.,) the false representation related to the business done at a public-house and the rent

received for a part of the premises, and the Court, in its opinion, said : " The representation was not of any matter or quality pertaining to the thing sold, and therefore likely to be mentioned in the conveyance ; but was altogether collateral to it, as was the rent in the case of Lysney v. Selby." (2 Lord Raymond, 1,118.)

In the execution of a conveyance, all previous representations pending the negotiation for the purchase are merged. The instrument contains the final agreement of the parties, and by it, in the absence of fraud, their rights and liabilities are to be determined. The possibility of a failure of title is a matter of consideration between the parties, and when the purchaser desires the goodness of the title guarantied, he requires covenants to be inserted in the conveyance ; but if he assumes the risk of the title, he accepts a deed without covenants. In the latter case, upon failure of title, he is without remedy for the purchasemoney ; in the former he is confined to his covenants. When, by the express terms of his conveyance, the vendor has fixed the extent of his liability, upon the failure of title, and the conveyance is accompanied with the delivery of possession of the premises sold, and there have been no false representations as to their quality, quantity, or condition, or as to the incumbrances upon them, or the rights or privileges appurtenant to them, or rents or profits arising from them, we cannot perceive any just ground upon which the purchaser, for a defect of title, instead of seeking his remedy upon the covenants of his deed, should be permitted to maintain an action for representations respecting such title, made in the negotiation for the purchase. Such representations must, in the great majority of cases, rest in the indistinct and confused recollection of witnesses; and if the doctrine contended for is upheld, it is easy to see, as says Bronson, J., in the case cited above, " that bad consequences may follow." In the case at bar, the only evidence as to the representation of the defendant is given by a witness nearly six years after the conversation occurred, in which it is alleged to have been made. In his direct examination, to the request to state the conversation, the witness replied that he did not recollect the whole of it, but the substance of it was, that the defendant " had the certain piece of property, and would sell it on favorable terms;" and, subsequently, to the question as to the representations, he answered, that the defendant represented that he was the owner of the property, and had purchased it of Larkin, without giving the language of the defendant; and, on his cross-examination, when requested to state the terms of the representations, he said the defendant " spoke of having such a piece of property—he might not have used the term of owning it."

It is apparent, from these answers, as well as from the state-

ment of the witness, that his recollection of what transpired was very imperfect. He answers with positiveness only when the answer desired is indicated by the leading questions asked. The principle which requires all evidence of verbal statements to be received with caution applies with peculiar force to the present case, where there has been so great an interval of time between the statements made and the evidence of them given, and it is sought to base upon them a charge of fraud.

The representation that the defendant had purchased the property of Larkin would seem to be true, from the finding of the jury, in the ejectment case; but, whether true or false, it cannot help the plaintiff, if the doctrine be correct that a false representation as to the naked fact of title, where a conveyance with covenants, general or limited, is executed, accompanied with delivery of possession of the property sold, will not support an action for deceit. Assuming the fact, which is not proved, that the title to the property was originally in Larkin, the allegation of the possession of a conveyance from him was no more than that the defendant was the owner of the premises. The action is based upon the supposition that the title was originally in Larkin, and that the contract of purchase between the parties was made upon that supposition; the affirmation, therefore, of ownership, or of possession of a conveyance from Larkin, amounted to the same thing.

Besides, if the plaintiff did not think proper to trust to the affirmation of the defendant, he could have called for an inspection of the alleged conveyance, or examined the records where the deed to him states the conveyance is recorded; or he could have made inquiries of Larkin himself. His neglect to avail himself of these means of information, whether attributable to credulity or indolence, takes from his action all claim to favorable consideration, and the remarks of Chancellor Kent are applicable to his case: "The common law affords to every one reasonable protection against fraud in dealing, but it does not go the romantic length of giving indemnity against the consequences of indolence and folly, or careless indifference to the ordinary and accessible means of information." (Clark *v.* Baird, 7 Barbour, 66.)

The judgment must be reversed, and the cause remanded.