Wright *v.* Carillo.

---

# WRIGHT *v.* CARILLO.

THE finding of a jury upon a fact which they are so peculiarly fitted to decide as the genuineness of a signature to a conveyance, will rarely if ever be interfered with on the ground that such finding is not warranted by the evidence.

A witness will not be presumed to be interested because he is shown to have executed a deed to the party calling him of the land in controversy, where the deed itself is not produced, and no proof is made as to the covenants which it contained. The Court will not presume that the deed contained covenants of warranty.

A grantor to whom his grantee still owes a portion of the purchase money may remove his interest in the controversy between the latter and a third person as to the title by executing to the grantee a formal release of all claims for the balance due.

The decision in *Peabody* v. *Phelps* (9 Cal. 213), to the effect that an action for a false and fraudulent representation as to the naked fact of title in the vendor of real estate, cannot be maintained by the purchaser who has taken possession of the premises sold under a conveyance with express covenants; and that if a party takes a conveyance without covenants, he has no remedy in case of failure of title—commented on and its correctness when applied to cases of fraud questioned.

Wright *v.* Carillo.

Under Sec. 422 of the Practice Act as amended in 1861, the vendee of the defendant and vendor of the plaintiff is, without regard to his interest, admissible as a witness for the plaintiff upon an issue as to the genuineness of the defendant's deed, where the latter has been examined upon that question on his own behalf.

Where plaintiff claimed title through a deed purporting to have been made by the defendant to H. & N., the genuineness of which was denied by the answer: *held*, that a declaration of defendant that he had made a deed of the land to P., in connection with proof that P. had received no deed, and had negotiated respecting the purchase with N. & H., was admissible evidence for plaintiff as a circumstance tending to show that the defendant had actually made the deed to N. & H., and was probably mistaken as to the grantee.

*Held*, further, that declarations made by defendant to H. a few days before the date of the deed, were admissible on the same grounds.

Upon the trial of an issue as to the genuineness of a deed, the Court gave the following instructions to the jury : "If there is a reasonable theory consistent with the evidence by which the jury can find in favor of the genuineness of the deed, and consistent with the honesty and truthfulness of all the witnesses in the case, it is the duty of the jury to adopt that theory in preference to one by which perjury or forgery may be involved on the part of a portion of the witnesses :" *held*, that there was no error in giving this instruction.

Where, upon the trial, the genuineness of a signature is put in issue and made the subject of proof, a new trial will not be granted on account of the discovery of new evidence tending to prove the signature a forgery.

APPEAL from the Seventh Judicial District.

The affidavits filed in support of the application for new trial, on the ground of newly-discovered evidence set forth, that the affiants were experts, and some of them bank-tellers ; that they had compared the genuine signatures of Carillo with the signature to the deed, and that the latter was a forgery. No evidence of experts had been introduced on the trial. The other facts appear in the opinion.

*E. A. Lawrence*, for Appellant.

I.   The verdict is not supported by the evidence. The two parties to the deed, Carillo and Millar, both deny the genuineness of their signatures. The other testimony in the case, on the part of both plaintiff and defendant, was testimony of an inferior grade. But one or two of the witnesses had ever seen Carillo or Millar write, and the rest of the testimony was confined to a comparison of the genuine signatures of these parties with their signatures on

Wright v. Carillo.

the deed. No witness on the part of plaintiff testifies to having seen either of them write, and their testimony does not rise to the dignity of rebutting testimony, or create a conflict with the testimony of Carillo and Millar.

II. The Court erred in permitting witness Hendley to testify.

1st. The deed from Hendley to plaintiff is not in the record. It is the best evidence as to whether he warranted the title, or conveyed by a bargain and sale deed. He does not testify as to the nature of the deed which he gave. He is presumed to be interested and incompetent, unless it appears that he did not warrant the title. (*Moon* v. *Campbell*, 1 Mumf. 600.) It has been repeatedly adjudicated that the vendor is not a competent witness where the validity of the title is involved. (*Blackwell* v. *Atkinson et al.*, 14 Cal. 470 ; *O'Blennis* v. *Corri*, 5 La. Au. 102.) So in regard to personal property, the rule is that the vendor in possession is not a competent witness for the vendee in an action against him, in which the title to the property is in controversy. (*Whiting* v. *Haywood*, 6 Cush. 82.) The reason of the rule explained in Hoe and also Sanborn (21 N. Y. 553). See, also, *Kingsbury* v. *Smith* (13 N. H. 109).

2d. Hendley was also incompetent, on account of his liability to plaintiff. This point was expressly decided by Chancellor Kent in the case of *Roberts* v. *Anderson* (3 Johns. Ch. 371). The decision there is put upon the express ground, not of an implied warranty, but of deceit or fraud practiced by the grantor upon her grantee. It might well be that a man having no title to land, but supposing he had, should convey to an innocent purchaser such title as he had by quitclaim deed, and be entirely innocent of any bad faith, and therefore be protected from liability in case of failure of title. But where a party is himself the grantee in a forged deed, and therefore, in contemplation of law, a *particeps criminis*, he cannot invoke any such protection for his sale, because he is guilty of a wrong. He has invested himself with the appearance of title by a forgery, which fact he is presumed to know, being a party to the forged deed, and against which the doctrine of *caveat emptor* will not apply. The Court below considered the case of *Peabody* v. *Phelps* (9 Cal. 213) as in conflict with the foregoing decision

of Chancellor Kent, and therefore overruled the motion for new trial.

We submit that the learned Judge erred in the construction which he put upon that case. That was a mere case of failure of title, and the Court held that there were no implied covenants beyond those contained in the deed. But if this Court should be of the opinion that *Peabody* v. *Phelps* is a case in point, then we respectfully submit that the case should be reviewed and overruled. (See *Leonard* v. *Pitney*, 5 Wend. 31; *Culver* v. *Avery*, 7 Id. 380; *Whitney* v. *Allaire*, 1 Coms. 313.) We think the Court erred in holding that the question was an open one in the Courts of New York. But if so, it has since been decided adversely to the decision in *Peabody* v. *Phelps*, in the case of *Crandall* v. *Bryan* (5 Abb. Pr. 164), wherein the Court refers to the foregoing decisions as settling the law on that point.

The doctrine of *caveat emptor* will not be applied so as to protect the vendor who knowingly defrauds the vendee. (1 Hill. Vend. 354.) It has been applied only in cases where there has been no fraud. (*Snyder* v. *Laframbrise*, — Breese, 268; *Fowler* v. *Smith*, 2 Cal. 44; *Thayer* v. *White*, 3 Id. 229; 11 Id. 160; *Doyle* v. *Knuff*, 3 Scam. 388; 2 Hill. Real Prop. 319, Sec. 68; *Bates* v. *Delavan*, 5 ——, 209.) And a party can repudiate the transaction when he discovers the fraud, provided there has been a failure of the whole consideration. (*Reese* v. *Gordon*, 19 Cal. 147; *Alvarez* v. *Brannan*, 7 Id. 503.) If there be fraud, the purchaser can come into equity for indemnity against eviction, disturbance, or defect of title. (*Deuston* v. *Morris*, 2 Edw. Ch. 37; 3 Cow. & Hill's Notes, 361–364, Note 950; Adams' Eq. 279.) Thus the verdict in this case would create a new responsibility, which the law would recognize and render available in favor of or reverse against the witness Hendley, and hence he ought to have been rejected. (*Conrad* v. *Kenyon*, 5 S. & R. 371.) Again: The judgment in this case would be evidence for or against him, provided Wright should bring suit against him (Hendley) to recover the $2,250 paid, on the ground of fraud.

III. The Court also erred in permitting the witness Walker, to testify that Carillo had told him that he had deeded the land to

Peabody, without the deed being produced or its absence accounted for, because:

1. This testimony was not cross-examination.  2. It was clearly incompetent, being in contravention of the Statute of Frauds; and the declarations made were of a vague character, in a casual conversation, and do not appear to have been acted upon.  3. The only issue before the Court was as to the genuineness of the deed from Carillo to Neville and Hendley, and it was error to allow plaintiff to make out his case by proving that Carillo had told witness that he had deeded the land to some one else (Peabody) than Neville and Hendley.  Such testimony could do no good to plaintiff, and was certainly productive of harm to defendant.  Evidence of a parol declaration of Penn, that the land in dispute was sold to the defendant, was refused by the Court, in *Richardson* v. *Campbell* (1 Dallas, 10).  Parol declarations of one having title are inadmissible to prove or disprove title or disclaimer.  (*Jackson* v. *Miller*, 6 Cow. 751; *Jackson* v. *Carey*, 16 Johns. 302; 2 Kent's Com. 478; *Rowe* v. *Bradley et al.*)  4. They seek to prove the contents of the deed—the date, and the description of the land conveyed—by this witness, without any foundation being laid. They have neither proved the deed to be lost, nor proved the execution of the deed, nor called for the subscribing witness.  To admit the testimony under these circumstances, was in direct violation of Sec. 447 of the Practice Act.  (1 Greenl. Ev., Sec. 95, 203; *Rex* v. *Carunion*, 8 East. 77.)

IV.  The Court erred in permitting witness Hendley to testify to a conversation had with Carillo prior to the execution of the deed from Carillo to Neville and Hendley.  This testimony could have been offered only on two grounds.  1st. As independent evidence that Carillo had conveyed to Peabody.  In this aspect it was clearly inadmissible, as being irrelevant to the issue, and also as repugnant to the Statute of Frauds.  2d. If offered for the purpose of contradicting and impeaching Carillo, no foundation was laid for impeaching him by interrogating him as to these facts.

V.  The Court erred in refusing the first and second instructions asked by defendant, and in giving the instruction asked by plaintiff, commencing: " If there is a reasonable theory consistent with the

evidence." It is for the jury alone to weigh the evidence; the Court cannot instruct them how they shall weigh it, or what process of reasoning they shall adopt in coming at their results. It is for them to determine what credit they will give to the testimony of each witness, as it is their privilege as well as their duty to reject the testimony of a witness if they are satisfied, either from his statement or his manner on the stand, that his testimony is untrue; and this without any reference to any " theory " which they may choose to adopt in regard to the case. What authority has the Judge to charge them that they must adopt a " theory ?" What right has he to charge them that they must, if possible, find in favor of the genuineness of the deed, and that, too, without submitting to them the question of fact whether the deed had been proved ? How can he instruct them that they must believe in the honesty and truthfulness of all the witnesses ? When stripped of all its circumlocution, it means, you must find in favor of the genuineness of the deed, and was considered as such by the jury.

VI. The affidavits of Sinton and others are filed as newly-discovered evidence; some of whom testify that they are bank-tellers, and all of them that they are experts, and that they have compared the genuine signatures of Carillo with the signature to the deed, and that the signature to the deed is a forgery. No experts were examined on the trial. The testimony is not cumulative.

*W. C. Wallace* and *J. Temple*, for Respondent.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. and NORTON, J. concurring.

This is an action commenced in the District Court of Sonoma County to quiet the title to a section of land in the possession of the plaintiff, to which the defendant claims title. The action is brought under Sec. 254 of the Practice Act. The complaint alleges that the plaintiff is the owner and in actual possession of the premises; that defendant claims some estate or interest therein adverse to the plaintiff, which casts a cloud upon his title and lessens the value of his estate, and prays that defendant's claim may be declared invalid. The defendant, by his answer, denied generally

Wright *v.* Carillo.

the allegations of the complaint, and averred that he was and still is the owner in fee simple, and entitled to the possession of the premises; that plaintiff's pretended title is fraudulent and void, and a cloud upon defendant's title; that plaintiff unlawfully entered upon the premises and ejected defendant therefrom, and unlawfully withholds the possession from the defendant, and prays that plaintiff's title may be declared null and void, and that he be ordered to deliver up the possession of the premises to the defendant. The plaintiff filed a replication to this answer, denying the allegations therein, and averring that on the tenth day of January, 1852, the defendant, for a valuable consideration, conveyed the premises to Hendley & Neville, from whom, through sundry mesne conveyances, plaintiff derived his title. The whole case depends upon the validity of a certain deed from the defendant to Hendley & Neville, dated January 10th, 1852, the plaintiff contending that it was genuine, and the defendant that it was a forgery. The following special issue was, therefore, submitted to a jury: " Is the document purporting to be a deed from Joaquin Carillo to John Hendley and Joseph N. Neville, dated Jan. 10th, A.D. 1852, a genuine deed?"

It was admitted by the parties that prior to the date of that deed, Carillo was the owner of the premises in controversy, and still is, unless said deed passed the title; that the plaintiff was in the possession of the premises and claiming title under the deed. The jury found that the deed was genuine, and the Court rendered a judgment for the plaintiff. A motion for a new trial was made, on various grounds, which was overruled, and the defendant takes this appeal from the judgment and the order overruling the motion for a new trial.

The first error assigned is that the evidence does not support the decision. The question whether the deed from Carillo to Hendley & Neville was genuine or not was a very proper one to be submitted to a jury. The jury in this case, and also the Court, found that it was genuine. A large mass of evidence bearing upon the question was introduced by the parties, and under these circumstances it would require a very strong showing against the verdict of the jury and the finding of the Court to induce us to hold that the decision was contrary to the evidence. Carillo was himself made a

witness on his own behalf, and in answer to a question whether he signed the deed or not, he says : " I see here the name of Joaquin Carillo, but I do not *believe* that it is my signature." This is the strongest statement in all his testimony against the genuineness of the signature. He, of all others, should best know whether it was his or not. It is a matter peculiarly within his own knowledge, and yet he only testifies that he " believes " it is not his. The deed purported to have been acknowledged before J. M. Miller, a Justice of the Peace of Sonoma County. The attesting witnesses to the deed are E. T. Peabody and J. M. Miller. Miller was examined as a witness, and when asked whether the signatures attached to the deed, and purporting to be his, were genuine, he replied : " It is my belief it is not." Here this witness also testified upon belief to a matter which was within his knowledge. It is unnecessary for us to refer to the mass of testimony in the record bearing upon this point. The evidence was conflicting, and there is not such a preponderance of evidence against the verdict of the jury and finding of the Court as will justify this Court in setting aside the verdict, or reversing the judgment on this ground. Indeed we are inclined to hold that the weight of testimony is in favor of the verdict and judgment. So much, in such cases, depends upon the manner of the witnesses in testifying, to enable a Court to judge of the extent of credit to be given to their evidence, and on the comparison of admitting genuine signatures and other evidence of a like character, which is not and cannot be brought before an Appellate Court, that we should hesitate long before setting aside a verdict or finding upon a point like the one now before us.

The next error assigned is that the Court below erred in admitting Hendley as a witness to testify on behalf of the plaintiff. Hendley was one of the vendors who sold and conveyed the land to the plaintiff, but the deed executed by him was not introduced in evidence. Appellant contends that the Court should have presumed that he was interested and incompetent, unless it was made to appear that he did not warrant the title, and that it is to be presumed that the deed contained covenants of warranty. We know of no rule of law justifying such a presumption. The plaintiff offered the witness, and as he was not a party to the action the presump-

tion was that he was competent; and as the defendant objected to his testifying on the ground of incompetency, it was for him to sustain his objection by proper proof, and if the alleged ground of his incompetency was that he was interested in the result of the suit in favor of the party offering him, by reason of having warranted the title to the plaintiff, that fact should have been shown by the defendant by proper proof; and the mere fact that the witness executed a deed to the plaintiff for the premises is no proof that such deed contained covenants warranting the title, nor will the Court presume that it contained such covenants.   It is because a vendor of real estate is liable upon his covenants of warranty, and is therefore interested in defending the title of his vendee, that he is excluded from being a witness for his vendee.   (*Blackwell* v. *Atkinson*, 14 Cal. 470.)

The examination of Hendley on his *voir dire* disclosed the fact that $2,500 of the purchase money due from the plaintiff to the witness had not been paid, but the witness had canceled the debt by writing the word " canceled " across the face of the note, dating, signing, and delivering it to plaintiff's attorney.   Defendant objected that the plaintiff was still liable to the witness, notwithstanding the cancellation and delivery of the note, and he was incompetent on the ground of interest.   But the record discloses the fact that the witness, while the objection to his competency was being argued to the Court, executed to the plaintiff a formal release of his liability, and thereupon the Court overruled the objection. We see no error in this.   Even if the cancellation of the note and its delivery thus canceled to the plaintiff, or his attorney, for the very purpose of discharging plaintiff from his liability, did not have that effect, which point we do not pass upon, still the formal release would be sufficient to remove all objection on this ground.

But it is also urged that Hendley was an incompetent witness, on the ground that he was liable for the amount of the purchase money ($2,250) paid him by the plaintiff, in case the latter should fail in this action.   It is contended that Hendley, being one of the grantees in the deed alleged to have been forged, is, in contemplation of law, a party to the crime; that his title was thus acquired by crime and fraud, and that he was guilty of a further fraud and

deceit in selling and conveying to the plaintiff, and that plaintiff has a good cause of action against him to recover back the $2,250 purchase money paid by him, on the ground of such fraud and deceit in the sale.

In reply to this, the respondent cites the case of *Peabody* v. *Phelps* (9 Cal. 213), where it was held that an action for a false and fraudulent representation as to the naked fact of title in the vendor of real estate cannot be maintained by the purchaser who has taken possession of the premises sold under a conveyance with express covenants ; and that if a party takes a conveyance without covenants, he is without remedy in case of failure of title ; if he takes a conveyance with covenants, his remedy, upon failure of title, is confined to them.   In answer, the appellant contends that the case of *Peabody* v. *Phelps* is, upon this point, in direct conflict with the decision of *Alvarez* v. *Brannan* (7 Cal. 503) and the whole current of authorities, and he asks us to review and overrule this decision in *Peabody* v. *Phelps*.   That case was decided after a full and elaborate discussion of the points involved, and this question seems to have been fully considered by the Court.   Under these circumstances we should hesitate long before overruling it, and then only upon being fully satisfied that the Court had departed from and violated a well-established rule of law, and that the evils likely to flow from it were great.   Instability and uncertainty in judicial decisions, especially those relating to titles of real estate, are great evils in any country.   Upon no question is a community more sensitive than upon those which affect the titles to their homes, and in none should greater care and caution be observed by Courts in their adjudications.   The prosperity and progress of a country depends so much upon the validity of its land titles that no Court can be justified in overturning long-settled principles of law relating to them, unless compelled to do so by the plainest dictates of reason and justice.   The reports of judicial decisions are full of overruled cases.   The highest Courts and the ablest Judges have repeatedly overruled and changed their own decisions, and this Court has been no exception.   Human judgment is imperfect, and errors are a necessary consequence.   Still, it is often better to submit to the evils arising from erroneous decisions, in view of the advantages

Wright *v.* Carillo.

arising from certainty and stability, rather than encountering the often greater evils flowing from the fickleness and inconsistency of Courts. Under the system of this State, by which frequent changes of Judges take place in this Court, it is of special importance that we adhere to settled decisions, so far as a due regard to right and justice will permit, to avoid the danger of creating a feverish state of uncertainty in the public mind. Courts should carefully adhere to those well-established principles and rules of law, to be found in the adjudications of the English and American Courts, which form the basis of our system of jurisprudence. To these we look for that certainty so essential in legal matters, and upon which the prosperity of a community so much depends. No Court should therefore depart from these well-settled principles, unless they are clearly and plainly inapplicable to our circumstances and condition, or opposed to the laws of the State. The appellant contends that this decision, in the case of *Peabody* v. *Phelps,* is a plain departure from these well-settled principles of law, unjustly affecting the rights of innocent persons, and screening the defrauder and deceiver. There are certainly very strong reasons for contending that a person obtaining money by false and fraudulent representations respecting his title to land should be compelled to repay it, as much so as the seller of a horse or other personal property, and the fact that the vendee has neglected to secure himself by proper covenants of warranty should be no defense. The fraud may have been perpetrated and falsehood employed for the very purpose of inducing the vendee to take the conveyance without any or with insufficient covenants. That fraud has been successful has never been supposed to deprive the party defrauded of all remedy. The power of a Court of Equity, as well as of Law, has heretofore been considered most potent in such cases; but if such be the law, they are powerless in the most aggravated cases of deceit. The ruling upon this point in *Peabody* v. *Phelps* is clearly in conflict with the decision in *Alvarez* v. *Brannan* (7 Cal. 503), and it should be reinvestigated in some case where it can properly be adjudicated and upon a full argument of the question. In this case, it comes before us indirectly; and in the view we take of the admissibility of this witness, it is not necessary to be determined. Here, Carillo,

the vendor, was examined as a witness on his own behalf, under the amendment of 1861 to Sec. 422 of the Practice Act, to impeach his own deed, and we think it clear that the plaintiff, who was not himself cognizant of the transaction, had a right to examine Hendley, one of the vendees in the deed, without regard to the question of interest. He is " an adverse party or person in interest," within the intent and meaning of the statute. The amendment is careful to provide that when one party to a transaction testifies on his own behalf the other or adverse party in the same transaction shall also be allowed to testify ; and in case one party is dead, then that the other shall not be admitted as a witness. We therefore see no error in permitting this witness to testify.

The next assignment of error is in permitting Walton to testify that Carillo had told him that he had deeded the land to Peabody and the time he so told him. We see no valid objection to this testimony.

Carillo's statements about having executed a deed or deeds to this land were admissible, as circumstances to show that this deed to Hendley & Neville was in fact executed by him, and that he was mistaken as to the name of the grantee. We understand this evidence to have been offered by the plaintiff, as admissions by the defendant upon this subject, and not for the purpose of proving a deed to Peabody, or its contents, if any such ever existed. The evidence of Hendley, respecting a conversation he had with Carillo a few days before the date of the deed, was also objected to, but we can see no error in its admission. It does not seem to have been offered to prove a deed to Peabody, or for the purpose of contradicting or impeaching Carillo, but merely to connect the deed to Hendley & Neville with the agreement by Carillo to convey a tract of land to Peabody, and to show that Carillo knew of the arrangement between Peabody and Hendley & Neville, by which the deed was made to the latter and not to the former. It also tended to show how Carillo might have been mistaken in supposing that he had made the deed to the former instead of the latter.

The appellant also assigns for error the refusal of the Court to give the following instructions asked by the defendant: " 1st, that if the jury believe from the evidence that the pretended deed from

Joaquin Carillo to Neville & Hendley was not executed in any particular as it now appears on its face, they are to presume that it is all false; 2d, that if the jury believe from the evidence that the plaintiff has failed to prove any of the signatures to said deed to be genuine, the jury should say that the said deed is not genuine." We see no error in refusing to give the instructions as thus asked for.    It is also urged that the Court erred in giving the following instruction asked for by the plaintiff: "If there is a reasonable theory, consistent with the evidence, by which the jury can find in favor of the genuineness of the deed, and consistent with the honesty and truthfulness of all the witnesses in the case, it is the duty of the jury to adopt that theory in preference to one by which perjury or forgery may be involved on the part of a portion of the witnesses."    We see no error in giving this instruction.

The last assignment of error is that the defendant has newly-discovered evidence, set forth in the affidavits of R. H. Sinton, B. R. Nesbitt, J. R. Fitch, Chas. H. Horton, and J. M. Neville, which he desires to introduce.    This testimony all relates to the genuineness of the signature of Carillo to the deed to Hendley & Neville, and is therefore clearly cumulative, and it affords no just ground for a new trial of the cause.

It may be doubtful whether this action lies under the circumstances of this case; but as no question of that kind was raised by the counsel for the appellant, either in the Court below or in this Court, we merely refer to it that it may not be treated as a precedent in any future case.

The judgment is affirmed.