## ALVAREZ v. BRANNAN.

Where defendant sold a lot to plaintiff, by deed of bargain and sale, for six thousand dollars, and plaintiff, supposing himself to be the owner thereof, paid taxes thereon, and afterwards discovered that his grantor had previously conveyed the lot; and the Court finds, as a fact, that defendant knew of his prior conveyance, and that the money was fraudulently obtained; the procurement, by defendant, of a full title to the lot, and a tender of conveyance of the same, to plaintiff, will not bar the plaintiff's recovery of the purchase-money, and interest.

It is immaterial whether a party, thus misrepresenting a material fact, knew it to be false, or did not know whether it was true or false.

Even where there is no intention to deceive, there may be such an amount of gross carelessness as to constitute conclusive evidence of a fraudulent intent.

Where a party knowingly misrepresents material facts, the law will not permit him to derive any benefit from the transaction.

The injured party may elect to rescind the contract, or proceed upon the covenants of his deed.

The objection that there is a defect of parties to the complaint, must be taken by demurrer or answer, or it will be deemed to have been waived; but the defendant may object on the trial, if the proof does not sustain plaintiff's allegations, as to his right of action.

APPEAL from the District Court of the Fourth Judicial District.

The following are the findings of fact and law, in the Court below, viz.:

On the twenty-eighth day of December, 1849, the defendant, Brannan, undertook to sell to Santiago H. Vives, lot number eight, in the block between Fifth and Sixth and L and M streets, in Sacramento City, for the consideration of six thousand dollars, and executed a deed therefor, to the said Vives, and thereupon the said Vives paid to the said defendant the said sum of six thousand dollars, as the purchase-money of said lot.

That said defendant had, in the month of May preceding, sold and conveyed the said lot to Peter H. Burnett, and since the

sale to Burnett, and up to the time of the commencing of this action, the defendant had no title whatever to the said lot; and the Court therefore finds that, at the time of the pretended sale to Vives, the defendant knew of his prior sale and conveyance to Burnett, and that the said sum of six thousand dollars was fraudulently obtained from said Vives.

And the Court further finds, that the said sum of six thousand dollars was partnership-money, of the said Vives and the plaintiff, and that the transaction for the purchase of the said lot was a partnership transaction, of the said Vives and the plaintiff. That Vives died without discovering the sale to Burnett.

That the plaintiff never discovered the said sale to said Burnett, until within six months prior to the commencement of this action.

That defendant subsequently acquired a perfect title, and tendered a conveyance to plaintiff, which was declined.

As a conclusion of law, the Court adjudges that the plaintiff is entitled to have and recover, of and from the defendant, the sum of six thousand dollars, with legal interest from the twenty-eighth of December, 1849.

Judgment being entered for plaintiff, in conformity with the above findings, the defendant moved for a new trial, which being denied, he appealed.

*Howard & Goold* for Appellant.

The plaintiff cannot maintain this action, as the other party in interest is not on the record.

The New York and California Codes of Practice adopt the chancery rule of practice as to parties, and require the real party in interest to be before the Court, either as plaintiff or defendant. They are necessary parties. Cal. Code Pr., Arts. IV, XIV, XII, Labatt's Ed.; 1 Whitaker p. 62.

The statute of May 1851, Digest, p. 405, § 198, does not authorize the surviving partner to sue without uniting the representatives of the deceased. It merely authorizes the surviving partner to continue in possession of the property, settle the business, and pay over to the representative of the deceased. The evidence shows that the executors of Vives made a deed by which the estate was divided. It may be that the heirs of Vives would prefer the title, such as it is, and the land, to the money. It is not in the power of Alvarez to divest title by neglecting to sue for the entire amount. Certainly not, without making the heirs of Vives parties. The division constituted them part owners of the land, and part owners must be parties. Story's Eq. Pl., § 168.

It is no answer to say there was a failure of title. The heirs may not so regard it. They may also prefer the subsequently acquired title to the purchase-money.

The Practice Act is subsequent in date to the act of May, 1851, and must control as to the rules of proceeding in Court.

The right of the surviving partner to sue is confined to the choses in action. It does not extend to the effects or property divided. It is the rule at law, and not the rule in equity, and, therefore, all parties in interest must be on the record. Story on Part., § 346.

If the name of Alvarez had been joined in the deed, it would not have constituted them partners as to the land, but tenants-in-common. Collyer, § 134.

It is quite immaterial whether this contract is controlled by the rules of the common or civil law. The plaintiff contends for the common law, and cites the decision in 4 Cal. Rep. The deed of Brannan did not amount to a warranty at common law. 4 Kent, 523, (471) and note to 2 Caines Reps., 188; Maney v. Porter, 3 Humphrey Reps., 347; Rawle on Cov. for title, p. 469.

It passes only the actual interest. 2 Hillard, 313, 319.

There cannot be a reasonable doubt, that the subsequent acquisition of the title of Brannan and the tender of it, and the setting up of the fact in the answer is sufficient. It has been repeatedly decided, both in New York and California, that an equitable defence may be set up to an action at law under the present system of pleading. The defendant having procured title, would have a right at any time, before final decree or judgment, to file his bill for specific performance, and compel the vendee to receive the deed. Under our statute, the subsequently acquired title would enure to the benefit of plaintiff without any conveyance. It appears from the correspondence, that the deed was tendered before suit brought.

If the vendor is able to give a good title at the time of the decree, it is sufficient. Willard's Eq., p. 295; Hepburn v. Auld, 5 Cranch, 262, 289; 2 Story's Eq., § 999.

If the vendee obtain, by a performance, the same title which he expected to obtain when he made the contract, a performance will be decreed. Hillard's Eq., p. 290; Brown v. Haff, 5 Paige, 235; Winne v. Reynolds, 6 Paige, 407.

In the late case of Mesick v. Sunderland, it was held that an equitable defence could be set up in an action at law, even in ejectment. Therefore, the defendant has a right to present the subsequently acquired title, and ask a specific performance, as in a Court of Equity. Neill v. Keese, 4 Tenn. Reps., 23.

There is no interruption of the Statute of Limitations. Nothing but fraud will do, and this means actual deceit, and not the sort of fraud created by legal fictions for the general purposes of justice. There being no independent evidence of any fraud, and the words "grant, bargain, etc.," not *per se* importing a representation, there is no fraud, legal or moral. There is a well

recognized distinction in law, between mistake and fraud. 1 Story Eq. Jur., treats "Accident," "Mistake," and "Fraud," under separate heads. The legislator must be supposed to have been acquainted with these, and if accident or mistake were a just ground for the interruption of the statute, the law-maker would have said so. There is a public policy to be upheld in punishing him who cheats, by refusing him the benefit of the statute until the cheat is discovered; but there is none in permitting the negligent and dilatory to exhume their forgotten blunders.

*C. Temple Emmett* for Respondent.

Brannan knew of the prior sale to Burnett. He executed the deed himself, and intended to include the lot in question. Intention can only be the result of knowledge.

What more then can the plaintiff prove to make out "fraud?"

The principle of law governing this point may be thus stated: Every man must be supposed to know and remember his own antecedent acts; certainly such as have happened within a period so short as that between the two sales in question.

How may civil suits and criminal prosecutions might be defeated if the defendant were permitted to plead a defective memory.

The above principle was the foundation of Lord Hardwicke's rule in equity pleading, to the effect that when, in a bill, the defendant is charged with his own act, he will not be permitted to deny it upon information and belief, if it has occurred within seven years, but he must deny it absolutely. Hoffman's Master in Ch., 264.

When the failure of title was discovered, the vendee had a right to rescind the contract. This has been universally held, whether the sale has been the result of mistake or fraud. Daniel v. Mitchell, 1 Story C. C. Rep., 189; Doggett v. Emerson, 3 ib., 732; Hough v. Richardson, 3 ib., 690; 1 Sugden on Vendors, 417, §§ 6, 7, and authorities there cited; 2 Kent, 475, 476; Parham v. Randolph, 4 Howard (Miss.) Rep., 435; Story on Sales, § 423; Taylor v. Fleet, 4 Barbour Sup. Ct. Rep., 95.

As to the question of partnership, see Gilbert v. Whidden, 20 Maine Rep., 367; Collyer on Part., § 686 and note 3.

BURNETT, J., delivered the opinion of the Court—TERRY, J., concurring.

On the twenty-eighth day of December, 1849, defendant sold to Santiago H. Vives, by deed of bargain and sale, a certain lot in the city of Sacramento for the sum of six thousand dollars, in cash. The defendant, in the month of May preceding, had sold and conveyed the same lot to Peter H. Burnett. Vives died in December, 1850. The taxes on the lot in question were paid by plaintiff, and the fact of the deed to Burnett was not discovered

by plaintiff until within six months prior to the commencement of this suit. When the prior deed to Burnett was discovered, plaintiff demanded the purchase-money of defendant, with interest, claiming as surviving partner of Vives, and alleging that the money paid·was partnership-funds, and invested for their joint benefit. Defendant offered to procure the title to the lot, and convey the same to the person entitled thereto. This was refused by plaintiff, and this suit was brought to recover the purchase-money, with interest. Plaintiff alleges fraud on the part of the defendant, and defendant admits the execution of the prior deed to Burnett, but insists that his sale to Vives was a mistake, and no intentional wrong. After commencement of the suit, defendant procured the title from the grantees of Burnett, and in his amended answer offered the same to plaintiff, if the Court should decide that plaintiff was entitled to it. The plaintiff demurred to the amended answer, and the demurrer was sustained. The issues were found for the plaintiff, and judgment given accordingly, from which defendant appeals to this Court.

The first important question, going to the merits of the controversy, is whether defendant was guilty of such fraud as to entitle plaintiff to rescind the contract, and recover the purchase-money. The counsel for defendant insists that, "in order to make out fraud there must be knowledge and intention to deceive." It is true that "an evil act, with an evil intent, is a positive fraud, in the true sense of the term." 1 Story's Eq. J., § 192. But it is equally true that, "whether a party thus misrepresenting a material fact, knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial." If a party asserts that *as true*, which he does not know to be true, it is a false representation. If he intends simply to state his belief upon information, then he should state it in that precise form, so as to apprise the other party of the true grounds upon which his statement is made. A party will always be held to make good his statement *in the form* in which he makes it. If he states· a thing as true in general terms without qualification, then he is presumed to do so upon his own knowledge, or at his own peril, and must make good his assertion.

But there is another kind of actual fraud, when there is no intention to deceive, actually existing in the mind of the party at the time of the transaction, but there is such an amount of gross carelessness as constitutes conclusive *evidence* of such fraudulent intent. Judge Story, in his Commentaries on Equity Jurisprudence, under the head of "Actual Fraud," says: "And even if the party innocently misrepresents a material fact by mistake, it is equally conclusive, for it operates as a surprise and imposition upon the other party. § 193. In support of this position he refers to a number of cases, and among others to the case of Pearson *v.* Morgan, 2 Bro. Ch. R., 385, "where A being interested in

an estate in fee, which was charged with eight thousand pounds sterling in favor of B, was applied to by C, who is about to lend money to B, to know if the eight thousand pounds sterling was still a subsisting charge on the estate. A stated that it was, and C lent his money to B accordingly; it appearing afterwards that the charge had been satisfied, it was nevertheless held, that the money lent was a charge on the lands, in the hands of A's heirs, because he either knew, or ought to have known, the fact of satisfaction, and his representation was a fraud on C."

The case of Burrows v. Lock, 10 Vesey, Jr., R., 475, is in point. Lock was trustee of one Courtwright, and plaintiff applied to him for information as to what amount Courtwright was entitled to, when Lock told plaintiff expressly that Courtwright was entitled to two hundred and eighty-eight pounds sterling, and had a right to make an assignment to that extent, knowing that he had previously agreed to give another person ten per cent. out of the fund. Sir William Grant, in delivering the opinion of the Court, said: "The excuse alleged by the trustee is, that though he had received information of the fact, he did not at that time recollect it. But what can the plaintiff do to make out a case of this kind, but show; First, that the fact as represented is false; and Second, that the person making the representation had a knowledge of a fact contrary to it? The plaintiff cannot dive into the secret recesses of his heart, so as to know whether he did or did not recollect the fact, and it is no excuse to say he did not recollect it."

It is indeed difficult for the law to lay down any other rule than the one referred to. The intention of a party can only be shown by proof, and when the injured party proves that the fact, as represented, was not only untrue, but that the person knew it to be untrue, he can show no more, and unless this be sufficient, he would be wholly unable to prove the fraud. And if a party could avail himself of his own carelessness and forgetfulness, and thus throw the consequences of his own acts upon the innocent party, then he could reverse the rules of right reason, and receive a reward, when responsibility was his due. The law must proceed upon practical principles, and act upon simple and efficient rules. A party who makes a deed is bound to know its contents, except when obtained by fraud or force, and *once* knowing its contents, he is bound to remember them at his own peril. Innocent parties cannot suffer by his forgetfulness. They cannot refresh his memory; *he* can. It is his business to remember his own acts. If he forgets, he must be equally as responsible to the party injured, as if he had not forgotten. And in this case it does not matter whether there was any intention to deceive or defraud Vives, existing in the mind of de-

fendant, or not, at the date of the deed; he is equally responsible, not morally, but in construction of law.

The next question arising in this case is, whether the defendant had the right to procure the title, and compel plaintiff to receive a conveyance, after demand of the purchase-money, and at any time prior to final judgment in the case. The defendant's counsel insists that he has this right, upon the ground that he only asks the privilege of making good his representation, and of giving to plaintiff all that plaintiff bargained for. In support of this ground, the learned counsel have referred to several authorities, and among others to the cases of Brown v. Haff & Lyons, 5 Paige, 235, and of Winne v. Reynolds, 6 Paige, 407. Both of these cases were bills in equity, by the vendor, to compel the vendee to accept a deed, and complete the purchase. In the first case, the defendant, Haff, alleged in his answer, that the complainant had defrauded him, in making the contract, and could not give a perfect title to the land. Chancellor Walworth said: "In general, however, it is not necessary for the complainant to show that he was able to give a good title, at the time of making the agreement to sell, or even at the commencement of the suit. It will be sufficient if he can give a perfect title at the time of the decree, or at the time when the master makes his report." The appeal in this case was taken from the Vice-Chancellor, upon a motion to dissolve an injunction, and discharge a *ne exeat*, and not from a final decision upon the whole merits.

But the doctrine laid down by the Chancellor, as to the right of a vendor to make his covenant for title good, at any time before a decree, is only applicable to cases free from fraud, or when the injured party proceeds on the covenant for damages. And, in this same case, the Chancellor says: "If the defendant proves the fraudulent misrepresentation, stated in his answer, that alone will be sufficient to prevent a decree for a specific performance, although the complainant may hereafter be able to give him a perfect and unincumbered title. In the latter case, the Court held that "a specific performance will be decreed, when the vendor is able to perform his agreement, in substance, although there is a trifling variation in the description of the premises, or a trifling incumbrance on the title, which cannot be removed, which is a proper subject of compensation to the purchaser." There was in this case no fraud alleged in the answer of defendant, but simply an inability in the complainant to make a good title.

The reasons for this distinction are evidently founded in justice and good sense. Where there is no fraud, and the vendor binds himself to convey a certain title, and afterwards discovers a defect which he can cure, and thus convey to the purchaser all the latter bargained for, it is obviously just that the vendor should be allowed to do so. But when a party misrepresents material facts, which he knows to be untrue, the law will not

33

permit him to derive any benefit from the transaction. The injured party has a right to elect to rescind the contract, and recover the purchase-money, or he may proceed upon the covenants in his deed. In case he elect to rescind, he must place the vendor in the same position he occupied at the date of the transaction. If the rule were otherwise, it would offer a reward for injustice. A party, knowing he had no title, could sell, and if the property *declined* in price, he could purchase the outstanding title for less than he received, and tender it to the purchaser; and if the property advanced, all he would be required to do would be to refund the purchase-money, with legal interest. All the wrongs would be on *his* side, and yet he would enjoy all the advantages of the market. The risk of loss would be entirely thrown upon the innocent, while all the *chance of gain* would be on the side of the guilty party. If such be the legitimate result of the rule, there must be something radically wrong in the rule itself. A rule of law that rewards the guilty and punishes the innocent, would defeat the noble ends aimed at by government. But, as the rule of law is different, the innocent party has his election, either to take the title, if it can be had of the vendor, or to recover the purchase-money, with the interest.

We do not deem it necessary to discuss the question as to the right of the injured party to rescind the contract, when he discovers the errors of the vendor. The authorities are ample. " Mistake as well as fraud, in any representation of fact material to the contract, furnishes a sufficient ground to set it aside, and declare it a nullity." Mr. Justice Story, in Daniel *v.* Mitchel et al., 1 Story's C. C. R., 190.

The last point we deem it necessary to notice is the objection that the representatives of Vives were not made parties to the suit. Under the provisions of the Practice Act, a defect of parties, when apparent upon the face of the complaint, is good ground for demurrer; and when not apparent upon the face of the complaint, may be taken by answer, and if not taken either by demurrer or answer, the defendant shall be deemed to have waived the same. The defendant did not demur, and there is in his answer no distinct objection made, that the heirs of Vives were not joined. The defendant simply denies that plaintiff and Vives were partners in the purchase. It is matter of doubt whether defendant could make that objection under his answer. But he had the right to, and did, also, object, that the proof did not sustain the allegation of partnership. It must be conceded that it admits of some question as to whether the proof was sufficient upon this point. Upon the whole, however, we think that a partnership in the purchase was sufficiently proven, and as the Court below so found, and the objection does not go to the merits of the case, we are not disposed to set aside the finding of the

Court, especially as upon two distinct trials, before different Judges, the same facts were substantially found by both.

The judgment of the Court below is, therefore, affirmed.