[L. A. No. 630.   Department Two.—August 28, 1900.]

W. A. CHOATE, Appellant, v. F. S. HYDE, Respondent.

VENDOR AND PURCHASER—ASSIGNMENT OF CONTRACT OF SALE—REPRESENTATION AS TO TITLE—KNOWLEDGE OF FACTS—REFORMATION—RESCISSION.—An assignment of a contract for the sale of land by a railroad company which had a patent therefor, made in consideration of the transfer of nursery stock by the assignee to the assignor, cannot be reformed or rescinded by the assignee on the ground that the assignor represented that the title was good, and that the contract did not express the understanding of the parties, if it appears that the contract to take the assignment of the contract of sale was clear and unambiguous, and fully understood by the assignee, and that both parties knew all the facts upon which the representation was based, and believed that the railroad company had a good title to the land.

ID.—EXPRESSION OF OPINION BY VENDOR—EQUAL MEANS OF INFORMATION—ABSENCE OF FRAUD.—A mere expression of opinion by the vendor as to the sufficiency of the title, if the means of information respecting it are equally accessible to both parties, or the same facts are within the knowledge of both parties, and no confidential relation exists between them, does not

constitute fraud or deceit on the part of the vendor, and does not justify the purchaser in relying thereon.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

Shirley C. Ward, Eugene Daney, and S. M. Parsons, for Appellant.

J. B. Mannix, for Respondent.

HENSHAW, J.—This was an action to recover eighteen hundred and seventy-five dollars, the price of certain nursery trees, under a written contract between the parties, and also for four hundred and thirty-nine dollars as the increased value of the trees after demand upon defendant therefor. Defendant asked for a reformation of the contract, and for a rescission of it as revised. The court gave him judgment as prayed for, and from the order denying him a new trial plaintiff appeals.

The contract between the parties was as follows: "That said Choate agrees to have assigned a certain contract for the purchase of seventy-five and a fraction acres of land in San Bernardino county, California, from the Southern Pacific Railroad Company, being contract numbered ten thousand seven hundred and sixty, for seventy-five and a fraction acres . . . . to said Hyde, free of all encumbrances, save the balance due on purchase price and interest to May 25, 1896, upon the execution of the bill of sale hereinafter mentioned to be given by said Hyde, and said Hyde agrees to give a bill of sale to said Choate for all the apricot nursery stock." Here follows a specific description of the trees to be given to Choate, to the value of eighteen hundred and seventy-five dollars. In seeking a reformation of this contract defendant pleaded that the intent of the parties was that Choate agreed to sell and defendant agreed to buy the land described, and not Choate's contract with the railroad to purchase the same; that the agreement was drawn without the aid of counsel by defendant himself, and that, being unversed in the law, he did not correctly set forth the understanding of the parties. For a rescission he pleaded

representations by plaintiff that his title to the land was good,
upon which he had relied; that he afterward discovered that
the title was not good, and demanded of plaintiff a rescission of
the contract.

We are satisfied that under the evidence in this case defend-
ant was not entitled to a reformation of the contract, and con-
sequently was not entitled to a rescission. It appears from
that evidence that plaintiff and defendant had negotiations
upon the subject matter of the contract, defendant desiring to
procure land, and plaintiff being willing to sell land to which
he had title, or upon which he had a contract for certain nurs-
ery trees. The agreement was finally concluded touching the
seventy-five acres in question. As to that land the facts were
that plaintiff and his father had entered upon it, claiming it
to be government land open to homestead or pre-emption; that
an adverse claim to the land was asserted by the Southern
Pacific Railroad Company, which contended that it was a part
of its grant; that contests had been waged between this plain-
tiff and the railroad company concerning the title to the land,
before the land office and the secretary of the interior, in every
case resulting in the defeat of the plaintiff; and that, finally,
a patent to the land from the government of the United States
had issued to the company. Plaintiff then had secured from
the company a contract to purchase the land, by which contract
the railroad agreed to sell for a definite price, declining to
guarantee its title, but covenanting, in case its title should not
prove valid, to return the purchase price. Under this con-
tract with the railroad company plaintiff had made certain
payments. There were still moneys to be paid, both principal
and interest. This was the situation when plaintiff and de-
fendant entered into their contract, and all of this was fully
explained by plaintiff to defendant before their agreement was
executed. Plaintiff testified as to this matter: "After my ex-
planation of all this trouble to Mr. Hyde, he seemed to be fully
satisfied that the title to the land was in the Southern Pacific,
and after that we talked altogether and always of transferring
this contract, of having this contract transferred to Mr. Hyde."
Defendant's own testimony is in striking harmony with this.
He says:

"Q.   Mr. Hyde, I understood you to say that when you first talked with Mr. Choate about this property that he told you the condition of the title; that he and his father had entered upon the land, assuming it to be government land, and they had fought the railroad company before the land office, and they had been defeated at every stage of the proceedings, and finally a patent had been issued to the railroad company?   A. He told me that on the way between Colton and his ranch.

"Q.   And that his evidence of title now was a contract with the railroad company?   A.   Yes.

"Q.   He explained that to you?   A.   Yes, sir."

Following this conversation the contract was drawn by defendant himself, and while he pleads his inexperience in preparing such documents, a reading of the instrument discloses that it was drawn with some art.   It expressly declares that Choate was to assign "a certain contract for the purchase of seventy-five and a fraction acres of land from the Southern Pacific Company . . . . free of all encumbrances, save the balance due on purchase price, and interest to May 25, 1896." There is no ambiguity or uncertainty or doubt as to the meaning of this language, and as little doubt as to defendant's understanding of it.   He accepted the contract as he had written it.   He took the assignment of the railroad contract, had it in his possession for months, paid moneys on account of it, and only after he feared a defect in the title which he expected to receive from the railroad did he declare that the contract between himself and plaintiff did not express the true intent of the parties.   He knew by Choate's own statement that Choate had no title and that he could not, therefore, contract to sell him the land with a good title.   He knew that Choate believed that the railroad title was good, and he knew the grounds of Choate's belief—his defeat in his endeavors to secure the land from the government, and the issue by the government to the railroad of that august muniment of title, a patent.   He could not, then, have been contracting that Choate should sell him the land, since all that he or Choate believed that the latter had to sell was his contract with the railroad for the purchase of the land.   But it is urged that Choate represented to plaintiff that "his title was good," or that "the

railroad title was good." Defendant's evidence goes to this effect; but what does that prove? It is not a case where representation as to the validity of the title is made without disclosure of the facts to one who relies upon the representations. All that can be said is that, after fully and fairly informing the defendant of the exact situation as to the title, of the facts upon which he founded his belief that the railroad had title, he declared his opinion to that effect. But mere expressions of opinion as to the sufficiency of the title, when the means of information are equally accessible to both parties, or the same facts are within the knowledge of both parties, and when no confidential relation exists between them, do not constitute fraud or deceit upon the part of the vendor. It is a mere statement of opinion, and does not justify the party to whom the statement is made in relying thereon. (*Nounnan v. Sutter County Land Co.*, 81 Cal. 1; Maupin on Titles to Real Estate, sec. 106.)

It is manifest, therefore, that the contract between these parties is exactly what they contemplated, and that the evidence failed utterly to support defendant's demand, either for reformation or rescission.

The judgment and order appealed from are, therefore, reversed.

Temple, J., and McFarland, J., concurred.

Hearing in Bank denied.