JAMES H. LOVERIN ET AL. *vs.* WILLIAM H. KUHNE
ET UX.

Third Judicial District, Bridgeport, October Term, 1919.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

The law will not permit one who intentionally misrepresents his title to real estate to escape liability for damages caused thereby, upon the theory that the person addressed—who believed and in good faith acted upon the statements to his own injury—need not have done so but might have resorted to the land records where he could have discovered their falsity.

While the doctrine of constructive, or presumed, knowledge of the contents of public records, is the equivalent of actual knowledge in determining the character and extent of the landowner's title and interest, the situation is very different where, as in the present case, the creation of purely personal rights are concerned; under such circumstances this doctrine will not shield from accountability one who makes false representations to another's damage.

One of two owners in common is not responsible for false representations made by the other owner respecting his title to the real estate, unless made with the former's authority, participation or acquiescence; and therefore a wife is not bound to surrender her interest

in the property to another, merely because her husband, as she afterward learned, had made false statements as to its title.

Argued October 30th—decided December 22d, 1919.

ACTION to recover damages for alleged fraudulent representations and conduct respecting the defendants' title to real estate, brought to and tried by the District Court of Waterbury, *Peasley, J.*, upon separate demurrers to the complaint filed by each defendant; the court sustained each demurrer and rendered judgment for the defendants, from which the plaintiffs appealed. *Error in part.*

The facts alleged in the complaint, aside from those of damage suffered, may be summarized as follows: In 1918 the defendants, husband and wife, were the owners in common of real estate in Woodbury, and the title thereto stood in them on the land records of that town. There were mortgages on the property amounting to $3,500. A civil action was then pending in the Fairfield County Court of Common Pleas, which the plaintiff Dolph Loverin had brought against the defendant William H. Kuhne, and the parties to it, with their counsel, were present in the Court House in Bridgeport waiting for the case to be called for trial. Negotiations looking to the settlement of the case were then had. In the course of them Kuhne and his counsel proposed the following terms of settlement, to wit: Kuhne to convey the equity in said property to the plaintiff Dolph Loverin or some person designated by him, and give possession thereof within a reasonable time, and Loverin in return to pay $100 to Kuhne, to release to the latter $455 held by the clerk of the court, being the proceeds of the sale of cattle attached, and to withdraw the suit. When this proposition was made, Loverin and his attorney inquired of Kuhne and his attorney as to the incumbrances upon the property, and

if the title was perfect. To those inquiries Kuhne and his attorney replied giving the incumbrances as stated, and further asserting that there was no flaw or defect in the title except possibly an old one that they would take care of and protect the grantee against. Loverin then inquired if it was necessary for Kuhne's wife to sign the deed. To this inquiry a negative reply was returned. Nothing was said at any time to indicate that Mrs. Kuhne, who was not present, had any interest in or title to the property. The proposition of settlement was thereupon accepted by Loverin and he then, in compliance with it, paid Kuhne the $100, released to him the $455, and withdrew his action. Kuhne in return executed and delivered a conveyance of his interest in the property to the plaintiff James Loverin, Dolph's son, whom the latter designated as the person to whom it should be made.

At the time when this representation was made and the terms of settlement agreed upon, both Kuhne and his attorney knew that the title to the property in question stood in the name of Kuhne and his wife upon the land records, and that the latter's signature was necessary for the conveyance of the equity therein. Their false representations were made, and their silence concerning Mrs. Kuhne's interest maintained, with such knowledge and for the purpose of inducing the plaintiff to act upon the truth of the representations in the settlement negotiations, and their representations and concealment of the truth did in fact induce Loverin to accept the terms of settlement proposed and in compliance therewith pay to Kuhne $100, release to him the $455, withdraw his action, and in return accept a deed of the equity of the property executed by Kuhne only.

Subsequently, and within a reasonable time, James Loverin, the grantee in the deed, visited the property

and demanded possession of it. Mrs. Kuhne then informed him that she owned a half interest in the equity, and asserted that as she had not conveyed that interest she was entitled to the possession of the premises and would not deliver up or give a conveyance of her interest unless she was paid the sum of $300. That attitude she has ever since maintained, and as a consequence possession of the property has not been obtained by the plaintiffs. At that time Mrs. Kuhne knew of the false representations which had been made by her husband and his counsel, the terms of settlement between Dolph Loverin and her husband, and what had been done pursuant to its terms.

*John H. Cassidy,* for the appellants (plaintiffs).

*Frank B. O'Neill,* for the appellees (defendants).

PRENTICE, C. J. The plaintiffs are for all practical purposes of this case one person. James H. Loverin's presence as a party is as one substituted for his father as a beneficiary of the transaction in controversy. The controversy is really the father's, and it will simplify statements somewhat if, in our discussion, we treat the father as the plaintiff and refer to him at times at least as such.

There are two defendants, husband and wife. Each filed a demurrer to the complaint. In so far as the husband's demurrer is concerned, the averments of the complaint will be found to show fraud and deceit on his part, with resulting damages to the plaintiff. A good cause of action against him, therefore, is stated, unless it be that the incidental fact that title to real estate was the subject-matter of the representations forming the basis of the fraud, takes the situation out from the operation of the ordinary rule. *Culver* v. *Avery,* 7 Wend.

(N. Y.) 380, 384. It is the defendant's contention that the existence of our land recording system accomplishes this latter result, through the means of knowledge of the true state of land titles it supplies, and the constructive knowledge of such titles which the law attributes to its disclosures.

The claim in this regard is a two-fold one. It is, in the first place, that as the plaintiff had in the land records of Woodbury the means of obtaining full and reliable information concerning the title to the property which Kuhne offered and agreed to convey, he is precluded from complaining that he was deceived and defrauded by any false statements of Kuhne; and, in the second place, that as the plaintiff would be presumed to have had knowledge of the fact which the records disclosed, that Kuhne had only an undivided interest in the property, he was not justified in relying on the latter's representations to the contrary.

The law touching the resort to available means of knowledge for the ascertainment of the truth, in the face of positive assertions of an existing fact, made by one in a position to know to one seeking guidance for his action, is well settled. It is stated by Pomeroy in his Equity Jurisprudence (Vol. 2, 3d Ed.) in § 891, as follows: "It may be laid down as a general proposition that where statements are of the first kind [i. e. statements of fact], and especially where they are concerning matters which, from their nature or situation, may be assumed to be within the knowledge or under the power of the party making the representation, the party to whom it is made has a right to rely on them, he is justified in relying on them, and in the absence of any knowledge of his own, or of any facts which should arouse suspicion and cast doubt upon the truth of the statements, he is not bound to make inquiries and examination for himself. It does not, under such circum-

stances, lie in the mouth of the person asserting the fact to object or complain because the other took him at his word." In *Mead* v. *Bunn*, 32 N. Y. 275, 280, appears the following more concise statement of the rule: "Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party, and unknown to him, as the basis of a mutual engagement; and he is under no obligation to investigate or verify statements, to the truth of which, the other party to the contract, with means of fuller knowledge, has deliberately pledged his faith." The following cases, among many others, contain similar statements of principle: *Hunt* v. *Barker*, 22 R. I. 18, 20, 46 Atl. 46; *David* v. *Park*, 103 Mass. 501, 502; *Bristol* v. *Braidwood*, 28 Mich. 191, 195; *Dodge* v. *Pope*, 93 Ind. 480, 486; *Carpenter* v. *Wright*, 52 Kan. 221, 225, 34 Pac. 798.

Two of our own cases plainly indicate our approval of this principle, although in neither is there an attempt to make a full statement of it. *Watson* v. *Atwood*, 25 Conn. 313, presented a situation substantially like that in the present case. The action was one in fraud arising from false representations as to the title to real estate conveyed by the defendant to the plaintiff. The court instructed the jury that it was the duty of the plaintiff to have exercised ordinary care and caution to ascertain the title to the land he was about to purchase, and if he did not do so he was at fault and could not recover. Under this instruction the question was left to the jury to determine whether or not he did act with reasonable care in not making an examination of the records, and in relying upon the representations of the defendant instead. The plaintiff had a verdict and the defendant appealed, in part for the reason that the instruction referred to was harmfully erroneous. The court dismissed this subject with the observation that

the defendant had no cause to complain of the charge, since it was more favorable to him than the law required, and added the following suggestive comment: "It is an extraordinary defense for a man, when sued for making a false and fraudulent representation, respecting the title of another, by which the purchaser became deceived and defrauded, to say to him, 'You cannot recover, because by searching the records you might have discovered the falsity of my representations; in other words, because you believed what I stated to be true, and acted accordingly without further evidence.'" p. 320. *Stevens* v. *Giddings,* 45 Conn. 507, was brought to enforce payment of the purchase price of a lot sold at public auction, at which the size of the lot was misrepresented. The purchaser having refused to accept the lot, the action was brought. The plaintiff insisted that as the means of verification were at hand, the defendant was not justified in relying upon the representations without investigation. The court held otherwise. p. 513.

Let us turn now to the defendants' alternative contention, that the plaintiffs cannot found an action of fraud upon Kuhne's representations, although false, since the law will presume that they had knowledge of the true state of the title as it appeared upon the land records. It is true, as counsel for the defendants urges, that we have held, notably in *Beach* v. *Osborne,* 74 Conn. 405, 50 Atl. 1019, 1118, that the title or interest which one acquires in realty will be determined in view of the facts disclosed of record, which for the purpose he will be presumed to know. But constructive knowledge arising from the contents of public records is not for all purposes the equivalent of actual knowledge. It is such equivalent in the determination of the character and extent of the landowner's title and interest, but when it comes to the creation of purely personal rights un-

related to title to or interest in land, the situation is very different. The doctrine of constructive notice does not apply to serve as a shield of protection from accountability for one who makes false representations to another's damage. "Where a representation is made of facts which are or may be assumed to be within the knowledge of the party making it, the knowledge of the receiving party concerning the real facts, which shall prevent his relying on and being misled by it, must be clearly and conclusively established by the evidence. The *mere existence of opportunities* for examination, or of sources for information, is not sufficient, even though by means of these opportunities and sources, in the absence of any representation at all, a constructive notice to the party would be inferred; the doctrine of constructive notice does not apply where there has been such a representation of fact." 2 Pomeroy's Equity Jurisprudence (3d Ed.) § 895. "As to the argument . . . that, the deed being mentioned, the purchaser had constructive notice of its contents, it cannot apply to a case in which an express representation is made to the purchaser, on which he may rely, and which turns out not to be a fair representation." *Drysdale* v. *Mace,* 2 Smale & Giff. 225, 230. These plaintiffs are not seeking to establish a title to or interest in the land concerning which the alleged misrepresentations were made. They are seeking indemnification for damages occasioned by a fraud perpetrated upon them through the misrepresentations. Whether or not Kuhne committed actionable fraud in making them, must be determined without regard for knowledge not actual but merely to be presumed from the contents of the land records.

The demurrer of the defendant's wife was properly sustained. The complaint contains no allegation of misrepresentation, concealment, or other fraudulent

conduct by her or by her authority, participation or acquiescence. The most that it charges against her is that she refused to yield up her rightful property in response to the plaintiffs' demands. She simply asserted her rights as she was clearly entitled to do. It did not militate against her right to pursue the course she did, that she had become aware of the terms upon which the suit was settled and withdrawn, and of the misrepresentations made by her husband in the course of the negotiations of settlement. She was not bound to surrender her property to another for no other reason than that her husband had made false statements concerning its title.

There is no error in the sustaining of the demurrer of the defendant Sarah E. Kuhne, and error in the sustaining of that of William H. Kuhne, and the cause is remanded to be proceeded with against the last-named defendant according to law.

In this opinion the other judges concurred.