[Civ. No. 4134. Third Appellate District.—September 30, 1930.]

A. E. HARGROVE et al., Appellants, v. HARRY O. HENDERSON et al., Respondents.

Ames & McFadden, McFadden, Holden & Friis, George
F. Holden and Leo J. Friis for Appellants.

W. I. Gilbert for Respondents.

MR. JUSTICE LUTTRELL, *pro tem.*, DELIVERED THE
OPINION OF THE COURT.—Plaintiffs and appellants, who are
husband and wife, brought this action against defendants
and respondents to recover damages for fraudulent repre-
sentations made as to the quantity and boundary lines of a
certain tract of land sold by them to plaintiffs in the county
of Orange, state of California.

Plaintiff A. E. Hargrove engaged in the real estate busi-
ness in said county in the year 1919. On March 1, 1920,
he entered into a copartnership with defendants Harry O.
Henderson and J. Lloyd Moore and a man by the name of
Wagner. This copartnership was formed to conduct a real
estate business.

At the time of the formation of such copartnership, the
defendants Henderson, owned a triangular piece of land in
said Orange County, across which the Southern Pacific Com-
pany owned a right of way 200 feet wide. This right of
way had come to said company through a grant from the
United States in 1872. The right of way divided said tri-
angular parcel of land owned by the Hendersons into two
separate parcels. The triangular piece, including the right
of way, contained 4.78 acres of land. Excluding the right-
of way, it contained 3.75 acres, the area of the right of way
being 1.03 acres.

Some time prior to the formation of such copartnership,
the defendants Henderson had contracted to sell said par-
cel of land including the 1.03 acres owned by the railroad
company, to the defendant Moore, and the Moores had gone
into possession of the land under the contract. The Moores
were desirous of disposing of their interest in the land and
it was in the hands of such real estate copartnership for

sale. Shortly after plaintiff Hargrove became associated with defendants in such real estate business, his associates Henderson and Moore called his attention to this land with a view of interesting him in its purchase. He made several trips to the land and looked it over. On one occasion, defendant Harry O. Henderson took him to the land and showed him the corners and boundaries thereof. The entire tract, including the 1.03-acre right of way owned by the railroad company, was planted to orange trees, the trees on the said right of way being younger and smaller than those on the parcels on either side thereof, owned by the Hendersons. The said right of way was unfenced and had no ties or railroad track of any description upon it. It had, in fact, nothing upon it to indicate that it was a right of way and looked no different from the adjoining land, except that the growing trees upon it were, as heretofore stated, younger and smaller than those on the adjoining land. On the occasion when defendant Harry O. Henderson took plaintiff A. E. Hargrove to the land and showed him the boundaries they went entirely around the triangular tract and Henderson informed Hargrove that he owned the entire tract, including the 1.03-acre right of way owned by the railroad company. No mention was made at that time of the right of way, but upon their return to their office, Hargrove asked Henderson if the railroad company had any right of way across the land and in reply Henderson told him that the railroad company had no right of way there and had no interest in the land.

Later on, during the month of May, 1920, and before the purchase of the land by plaintiffs, as hereinafter noted, defendant Henderson again told Hargrove that the railroad company had no right of way there; that the company never had owned the land and had not used it for eleven years; that he could not get the railroad company to do anything about it and that he finally tore up the railroad ties and rails and planted the land where they had been to orange trees. He further informed Hargrove on such occasion that the railroad company had had him in court three times over the matter, but that his attorney had each time demurred the company out of court, and that the company was through and had no right there and would not come back again.

On May 28, 1920, the defendants Henderson sold the entire triangular tract, including the 1.03-acre right of way owned by the railroad company, to plaintiffs for the sum of $24,000. This was the same amount that the defendants Moore had contracted to pay the Hendersons for the land when they entered into the contract to purchase same. At the time of the sale to the Hargroves the Moores had paid the Hendersons on the purchase price of the land the sum of $11,500 and still owed the sum of $12,500. The Hargroves paid the purchase price of the land by paying to the Moores the $11,500, which they had paid to the Hendersons under their contract and by giving to the Hendersons their notes, secured by a mortgage on the land for $12,500, the balance of the purchase price. Thereupon, and on said May 28, 1920, the Hendersons executed and delivered to the plaintiff a joint tenancy deed "granting" to them, as joint tenants, the entire triangular tract of land, describing same by metes and bounds, "and containing 4.78 acres".

This deed, after describing the land sought to be conveyed, contained a clause in the following language: "Subject to the conditions, covenants, restrictions and reservations now of record."

Plaintiffs went into possession of the entire 4.78 acres and in due time, paid the notes and mortgage given the Hendersons in the purchase of the land.

In 1924, the Southern Pacific Company brought an action in ejectment against plaintiffs for the 1.03 acres embraced in its right of way and recovered judgment and evicted plaintiffs from said 1.03-acre tract.

Plaintiffs then brought the present action for damages. At the trial of the action plaintiffs proved the facts, as above set forth, and in addition proved that they relied upon the representations of defendant Harry O. Henderson, as to his ownership of the entire tract of land described in their deed, including the 1.03 acres thereof owned at the time by the Southern Pacific Company. They also proved their claimed damage of $12,000, being the difference in value between the triangular tract purchased, including the railroad right of way and its value excluding such right of way.

After plaintiffs had rested their case, defendants moved the trial court for a nonsuit, which motion was granted and judgment thereupon made and entered in favor of defendants for their costs of suit. From this judgment this appeal was taken.

During the trial respondents seemed to lay much stress upon the so-called reservation clause contained in the deed, as above mentioned, taking the position that such clause excepted the railroad right of way from the transfer. Apparently this position has been abandoned on this appeal, as no mention is made of the point in respondents' brief. Anyway, we find no merit in such claim.

In our view of the case the appeal presents but two questions for solution. First: Did the defendant Harry O. Henderson, acting in behalf of himself and his wife in selling the land in question, perpetrate a fraud upon the purchasers in representing to them that he owned the entire tract deeded and that the railroad company did not then, nor had it ever owned any part of such tract, or did he give the purchasers sufficient information regarding any claim which the railroad company might have to put them upon notice and obligate them to search the records, or make further inquiry as to the condition of the title of the lands involved before purchasing same? Secondly: Under the facts disclosed by the record was an action for damages for fraud and deceit growing out of the claimed false representations as to title, quantity and boundaries of the land deeded, available to the plaintiffs, or were they restricted to an action for rescission of the contract, or an action on the covenants in the deed of sale, if any there be? We will consider these two propositions in the order mentioned.

At the outset we are confronted with the well-settled principle of law that in considering an appeal from a judgment of nonsuit every inference of fact and intendment of law must be liberally construed in favor of sustaining the case made by plaintiffs to the end that the cause may be determined upon its merits. (*Coakley* v. *Ajuria,* 209 Cal. 745 [290 Pac. 33].)

The California Civil Code defines fraud as being either actual or constructive.

Actual fraud is therein defined to consist, among other things, of the following acts committed by a party to the

contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: "1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."

"Constructive fraud consists: 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him; or 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud." (Civ. Code, secs. 1571, 1572, 1573.)

Mechem, in his work on Sales, volume 2, at page 730, says: "Fraud is proved when it is shown that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly careless whether it be true or false. If fraud be proved, the motive of the person guilty of it is immaterial. It matters not that there was no intention to cheat or injure the person to whom the statement was made."

Our Supreme Court in the early case of *Alvarez* v. *Brannan*, 7 Cal. 503 [68 Am. Dec. 274], in discussing the question of fraud, used this language: "It is true that 'an evil act, with an evil intent, is a positive fraud, in the true sense of the term'. (1 Story's Equity Jurisprudence, sec. 192.) But it is equally true that, 'whether a party thus misrepresenting a material fact, knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial'. If a party asserts that *as true,* which he does not know to be true, it is a false representation. If he intends simply to state his belief, upon information, then he should state it in that precise form, so as to apprise the other party of the true grounds upon which his statement is made. A party will always be held to make good his statement *in the form* in which he makes it. If he states a thing as true in general terms without qualification, then he is presumed to do so upon his own knowledge, or at his own peril, and must make good his assertion. But there is another kind of actual fraud, when

there is no intention to deceive, actually existing in the mind of the party at the time of the transaction, but there is such an amount of gross carelessness as constitutes conclusive *evidence* of such fraudulent intent.'' The same principle was declared in *Muller* v. *Palmer,* 144 Cal. 305 [79 Pac. 954], and in *Blake* v. *Arp,* 180 Cal. 144 [179 Pac. 683].

It is also well settled that a vendor is presumed to know the area and boundaries of his own land, and a vendee is entitled to rely upon the representations of the vendor as to the extent and boundaries of his property, and if the vendee suffers damage by reason of such representations, he has a good cause of action against the vendor. (*Eichelberger* v. *Mills Land & Water Co.,* 9 Cal. App. 628 [100 Pac. 117] ; *Del Grande* v. *Castelhun,* 56 Cal. App. 366 [205 Pac. 18] ; *Harder* v. *Alred,* 61 Cal. App. 394 [214 Pac. 1017].) Furthermore, a vendee, under such circumstances, is not required to investigate the public records, or to make further inquiry as to the area or title or boundaries of the vendor's land. (*Teague* v. *Hall,* 171 Cal. 668 [154 Pac. 851] ; *People* v. *Hemminger,* 20 Cal. App. 79 [128 Pac. 352] ; *Peardon* v. *Markley,* 50 Cal. App. 257 [195 Pac. 70] ; *Loverin* v. *Kuhne,* 94 Conn. 219 [33 A. L. R. 848, 108 Atl. 554] ; *Backer* v. *Pyne,* 130 Ind. 288 [30 Am. St. Rep. 231, 30 N. E. 21] ; *R. W. Kevil & Son* v. *Wilford Stunston & Co.,* (Ky.) 104 S. W. 348.) The principle is aptly stated in *Lynch* v. *Palmer,* 237 Mass. 150 [33 A. L. R. 842, 129 N. E. 374], as follows: ''The defendant's contention that the representation that he was the owner of lot 89 is not a material one, and cannot be impeached on the ground of fraud cannot be sustained. While the plaintiff could have ascertained the falsity of the statement by an examination of the title in the registry of deeds, she was not bound as matter of law to make such examination, but could rely upon the positive assurances of the defendant that he was the owner of lot 89.''

Such being the state of the law, and especially in this case where the appeal is one from a judgment of nonsuit, we are constrained to hold that the positive statements made by defendant Harry O. Henderson to plaintiff A. E. Hargrove, as hereinbefore related, to the effect that he owned all of the land within the boundaries pointed out to

said plaintiff and that the railroad company did not have any right of way across said tract and had never owned any portion of said land, when in truth and in fact such railroad company then and ever since the year 1872 had owned a right of way 200 feet wide and containing 1.03 acres extending entirely through said tract and severing it into two separate parcels constituted actionable fraud and was at least sufficient evidence upon this point in the case to put the defendants upon their proof. That plaintiffs were damaged in not getting this 1.03 acres of land and by having the land which they did obtain divided into two separate parcels by reason thereof, to the extent of $12,000, is an admitted fact, in so far as this appeal is concerned.

Having reached this conclusion in the premises, we come now to a consideration of the remaining question in the case, namely, whether or not, under the facts and circumstances as disclosed by the record, plaintiffs could maintain an action for fraud and deceit. Respondents earnestly contend that such action does not lie in this state, but that a vendee, under such circumstances, must either sue for a rescission of his contract or resort to an action for breach of the warranties in his deed, if such deed contain warranties. In support of their position in this regard respondents cite and rely upon the decision in the case of *Peabody* v. *Phelps*, 9 Cal. 213, decided by our Supreme Court in the year 1858. They assert that the instant case is so analogous to the *Peabody* v. *Phelps* case that the decision therein is controlling in this case. Appellants seem to agree that the case at bar is analogous to the *Peabody* v. *Phelps* case, but they contend that the decision in that case is contrary to reason and sound principles of justice and is against the great weight of authority in this country and therefore, should be overruled. We have carefully considered the *Peabody* v. *Phelps* decision and find that the case before us is clearly distinguishable from that case. In that case the deed of conveyance to the plaintiff contained express covenants of title, as is evidenced by the following language found on page 225 of the opinion: ''The conveyance to the plaintiff included a covenant to warrant and defend the grantee, his heirs and assigns, in the title to the premises from the grantor, his heirs and assigns, forever.'' In the case before us the deed to the plaintiffs contained no express covenants

or warranties of title. As heretofore shown, it was simply a "grant" deed.

From the use of the word "grant" in any conveyance by which an estate of inheritance or fee simple is to be passed, the following covenants, and none other, on the part of the grantor for himself and his heirs to the grantee, his heirs and assigns, are implied, unless restrained by express terms contained in such conveyance:

1. That previous to the time of the execution of such conveyance, the grantor has not conveyed the same estate, or any right, title, or interest therein, to any person other than the grantee;

2. That such estate is at the time of the execution of such conveyance free from encumbrances done, made, or suffered by the grantor, or any person claiming under him. (Civ. Code, sec. 1113; *Gaffey* v. *Welk*, 46 Cal. App. 385 [189 Pac. 300].)

The only question upon the point involved in the case of *Peabody* v. *Phelps* was whether or not an action for a false and fraudulent representation as to the naked fact of title in the vendor of real estate could be maintained by the purchaser who had taken possession of the premises sold, under a conveyance with express covenants, and it was decided that such action would not lie but that the purchaser must bring his action for breach of the covenants in his deed. It is true that the learned justice who wrote the opinion in that case, after thus concluding that the purchaser was restricted to an action for breach of the express warranties contained in his deed, took occasion to discuss, at considerable length, the question as to the right of a vendee who had taken a deed without express warranties of title, to maintain an action for fraud and deceit, and concluded that under such circumstances, such vendee would be without remedy, but, as heretofore noted, such question was not involved in the case, and the discussion of same in the opinion and the conclusion drawn may be regarded as pure *dictum*. In view of this fact, we do not regard the decision in the *Peabody* v. *Phelps* case as in any way controlling, nor even as authority in the case at bar.

In passing, it may not be out of place here, and may serve some useful purpose, to note that the decision in that case

is, as claimed by counsel for appellants, out of harmony with the great weight of authority in this country and has met with severe, and what we deem just criticism, at the hands of our own Supreme Court and also the courts of other jurisdictions, as well as by very eminent text-writers. It came before the Supreme Court of this state for discussion in the case of *Wright* v. *Carillo,* 22 Cal. 595, and from the language used in that opinion, we are inclined to believe that had the question involved been squarely before the court so as to have required a decision upon the point, the *Peabody* v. *Phelps* case would have been then and there overruled. Mr. Justice Crocker, in writing the opinion in *Wright* v. *Carillo,* commented upon the decision in the *Peabody* v. *Phelps* case as follows: ''The appellant contends that this decision, in the case of *Peabody* v. *Phelps,* is a plain departure from these well-settled principles of law, unjustly affecting the rights of innocent persons, and screening the defrauder and deceiver. There are certainly very strong reasons for contending that a person obtaining money by false and fraudulent representations respecting his title to land should be compelled to repay it, as much so as the seller of a horse or other personal property; and the fact that the vendee has neglected to secure himself by proper covenants of warranty should be no defense. The fraud may have been perpetrated and falsehood employed for the very purpose of inducing the vendee to take the conveyance without any or with insufficient covenants. That fraud has been successful has never been supposed to deprive the party defrauded of all remedy. The power of a court of equity, as well as of law, has been heretofore considered most potent in such cases; but if such be the law, they are powerless in the most aggravated cases of deceit. The ruling upon this point in *Peabody* v. *Phelps* is clearly in conflict with the decision in *Alvarez* v. *Brannan,* 7 Cal. 503 [68 Am. Dec. 274], and it should be reinvestigated in some case where it can properly be adjudicated, and upon a full argument of the question.'' Then follows a statement by the writer of the opinion that because of the fact that the question was indirectly before the court, it was unnecessary to determine it. In the comparatively recent case of *Mitchell* v. *California Pacific Title Ins. Co.,* 79 Cal. App. 45 [248 Pac. 1035],

decided in 1926, reference was made to the *Peabody* v. *Phelps* case, among others, and while the point under consideration was not directly before the court for decision, it is interesting to note the comment as contained in the following language: "It is contended by respondents Myerstein and California Pacific Title Insurance Company that a sale of the character described is analogous to a judicial sale, to which the rule of *caveat emptor* applies; and that if a party takes a conveyance without covenants he is without remedy in case of a failure of title, and if with covenants his remedy upon such failure is confined to the covenants. Such was the view as to conveyances without covenants in the earlier decisions of California, following the rule at common law, fraud or mistake in the transaction being absent."

Turning to the authorities from other jurisdictions, we find that the question under consideration was ably and very thoroughly considered in the annotations to the case of *Loverin* v. *Kuhne*, 33 A. L. R. 848. On page 1104 of this volume the conclusion as to the weight of authority upon the question is set forth as follows: "The preponderance of authority is decidedly in favor of the doctrine that the remedy of an action for deceit is available, although the vendor's deed contains a covenant applicable to the subject-matter of his misrepresentation. 'Where a party has been induced, by a fraudulent representation, to pay his money and accept a deed, it is immaterial whether any, or what, covenants are contained in the deed. The purchaser defrauded has a right to treat the deed as a nullity, and may maintain an action on the case for the deceit. The fraud is not merged or extinguished by the covenant, but affords an additional and more complete remedy to the party.' (Citing cases.) There is some judicial support for a contrary doctrine. (Citing *Peabody* v. *Phelps, supra.*) But the weight of authority is clearly opposed to it. There is seemingly no satisfactory ground upon which it can be contended that, by accepting a deed containing covenants with regard to certain subject-matters, the vendee precludes himself from maintaining an action of tort on the ground of fraudulent representations concerning those matters. The situation may more reasonably be regarded as being simply one in which two independent remedies are open to the de-

ceived party. The right of the vendee to maintain an action in cases where the vendor's deed contains no covenants of any description has been explicitly affirmed. (Citing cases.) In cases of this type, it is immaterial whether the vendor expressly refused to give the covenants, or the omission arose from any other cause. 'If the purchaser consents to waive the usual covenants, he is none the less entitled to the exercise of good faith and honesty on the part of the vendor.' ''

It is interesting to note the criticism of the Peabody case in the annotations above mentioned. After quoting at length from the Peabody case the author continues as follows: ''The learned judge reviewed the New York decisions, and reached the conclusion that the point under discussion was still unsettled in that state. With all deference, it is submitted that this view was erroneous. That one of the decisions referred to, *Ward* v. *Wiman,* (1837) 17 Wend. (N. Y.) 193, was a distinct authority for the doctrine impugned by Field, J., is shown by the fact that the actual point decided was that the lower court had properly overruled a demurrer to a plea based on the ground that the vendor's deed contained a covenant applicable to the subject-matter of the alleged misrepresentation. Furthermore, a reference to the report of *Whitney* v. *Allaire* [1 N. Y. 305] will show that he was not warranted in treating the language of Gardiner, J., as being expressive merely of a personal opinion, and that the remarks of Bronson, J., on which he laid great stress, embodied a theory, which was not concurred in by any of his colleagues. Field, J., cited the judgment of the supreme court in *Clarke* v. *Baird,* (1849) 7 Barb. (N. Y.) 65, but apparently had no knowledge of the statement made by the court of appeals in that case (see [1853] 9 N. Y. 183), to the effect that it was fully satisfied with the earlier decision in *Whitney* v. *Allaire.* So far as the present writer has been able to ascertain, *Peabody* v. *Phelps, supra,* has never been overruled in California itself. In *Wright* v. *Carillo,* (1863) 22 Cal. 596, the court was asked to review and overrule this decision, as being in conflict with *Alvarez* v. *Brannan,* (1857) 7 Cal. 503 [68 Am. Dec. 274]; but refused to do so on the ground that the case at bar did not require a determination of the point. That the court was

strongly inclined to regard the decision as erroneous is clear from its language. In *McLeod* v. *Barnum,* (1901) 131 Cal. 608 [63 Pac. 924], it was cited, strangely enough, as an authority for the rule applicable in cases not involving fraud.''

The case of *Whitney* v. *Allaire, supra,* referred to in the Peabody case, is certainly not authority for the conclusion reached in that case. The fact is that the Whitney case is directly opposed to the Peabody case. In the Whitney case Gardiner, J., in writing the prevailing opinion, said: ''For more than thirty years it had been the settled doctrine of the courts of this state that fraudulent representation in reference to the title of real estate, accompanied with damage, is a good ground of action, and that it is immaterial whether any, or what, covenants are contained in the deed of conveyance.'' Seven of his associates on the bench concurred in this conclusion. Only one of them, Bronson, J., differed from him, and he reached no conclusion on the point. Yet, this decision was apparently largely relied upon in deciding the point in the Peabody case, the quotations in the latter case, however, being largely taken from the opinion of Bronson, J., who, as stated, did not agree with his colleagues in the conclusion reached by them.

In 20 Cyc., at page 89, under the title, ''Election of Remedies'', in discussing the question before us, it is said: ''Thus as a general rule an action of deceit may be maintained by a purchaser of real or personal property against his vendor for fraudulent misrepresentations as to title or as to other material facts relating to the property, notwithstanding that the conveyance is by deed or bill of sale containing covenants or warranties which cover the subject matter of the representations.'' Many cases from various jurisdictions are cited as supporting this statement in the text. The case of *Peabody* v. *Phelps* is cited as supporting the contrary doctrine.

The question at issue is quite fully considered in 12 R. C. L., pages 410, 411, where the same conclusion is reached as is found in 20 Cyc., *supra.* In the footnotes appended to the decision in the case of *Bostwick* v. *Lewis,* 2 Am. Dec. 73, the case of *Peabody* v. *Phelps* is discussed at some length and the following conclusion reached: ''Therefore, it is now well settled that actions for fraud in

the sale of real estate will lie, notwithstanding the conveyance is made with covenants.''

In the well-considered case of *Sellards* v. *Adams,* 190 Ky. 723 [228 S. W. 424], the court, after reviewing numerous authorities, said: ''It will be observed that none of the above cited cases confine a vendee to a reliance alone for recoupment upon the covenants of warranty in his deed when the sale and purchase was the result of fraud practiced by the vendor. Where the purchase of the land is the result of false representations as to the title of the land knowingly made by the vendor with the purpose to deceive and to induce the purchase, and relied upon by the vendee, and the sale is induced thereby, and therefore not constructively, but actually, fraudulent, and the vendee suffers injury therefrom, he may maintain an action against the vendor for the damages suffered on account of the fraud and deceit, or he may maintain an action for the rescission of the contract, if he acts promptly when the fraud is discovered. While the greater number of the decisions of this court in such states of case have dealt with the right to maintain actions for rescission and the incidents of such actions, the right to maintain the action for deceit is nearly universally upheld, although there is some authority to the contrary.'' (Citing many cases.)

Thompson on Real Property, 1929 Supplement, at page 1248, announces the same principle as follows: ''One induced to purchase land by fraudulent misrepresentations may either bring an action for fraud or for the breach of the covenants of his deed. He has an election.''

From the authorities thus reviewed it is apparent that the case of *Peabody* v. *Phelps,* so much relied upon by respondents in the instant case in justification of the trial court's action in granting a nonsuit, is, as heretofore stated, clearly against the great weight of authority, and even if same were in point here, could well be disregarded. Indeed, we seriously question whether, in view of the criticism of such case in the *Wright* v. *Carillo* decision, same can longer be considered as authority in this state, even upon the point therein decided.

Counsel for respondents in the case before us cite, as supporting the *Peabody* v. *Phelps* decision, the case of *Gaffey*

v. *Welk,* 46 Cal. App. 385 [189 Pac. 300], and in their brief quote at length from this decision. The *Gaffey* v. *Welk* case, however, is to be distinguished from the *Peabody* v. *Phelps* case in that no charge or element of fraud or misrepresentation whatsoever was involved therein, and consequently is not authority supporting the Peabody case. The opinion in the *Gaffey* v. *Welk* case contains quite extensive quotations from that in the case of *Bryan* v. *Swain,* 56 Cal. 616, upon the point, but an examination of this latter case discloses that it, too, was a case in which the element of fraud was entirely absent. Respondents also rely upon the case of *Cahote* v. *Hyde,* 129 Cal. 580 [62 Pac. 118], as being decisive of the case before us. In this they are in error, for in the *Cahote* v. *Hyde* case, unlike the instant case, all of the facts pertaining to the title involved were fully disclosed by the seller to the purchaser before the contract was made and the seller merely expressed his opinion as to the title. Then, too, a nonsuit was not granted in that case but the judgment of the trial court was rendered after a trial of the case upon the merits.

It has been quite recently held in the case of *Paolini* v. *Sulprizio,* 201 Cal. 683 [258 Pac. 380], that three remedies are open to a party defrauded in a contract for the purchase of real estate, one being a rescission with claim for damages, another an affirmance of the contract, the purchaser retaining what he has received and suing for his damages in an action for deceit, and thirdly, the setting up of the seller's fraud as a partial defense or counterclaim, without offer of restitution and the recouping of damages in an action brought by the guilty party to the contract. It was also held in this case that a right of action for damages for fraud arises immediately upon the consummation of the fraud, which may arise in a contract executed or executory, and which may be asserted at once upon discovery of the fraud. It would seem that the plaintiffs in the case before us availed themselves, as in our opinion they had a right to do, of the second remedy mentioned in this case.

In conclusion, we do not understand that appellants make any claim in this appeal that they proved any case against the respondents, Moore, or either of them. At any rate, we find no evidence in the record tending to connect

either of these two respondents with any fraud or misrepresentation in the transaction. A judgment of nonsuit as to them was therefore proper.

█ As to the respondent Louisa P. Henderson, the record shows that the title to the land involved, other than the right of way owned by the Southern Pacific Company, stood in her name at the time of the sale and that she joined with her husband, the respondent Harry O. Henderson, in the conveyance of the property to the appellants. We therefore hold that a *prima facie* case of agency is shown between her and her said husband and that she is accountable with him for any damage resulting from his representations in the premises. (*Quarg* v. *Scher*, 136 Cal. 406 [69 Pac. 96].)

From the views herein expressed, we conclude that the learned trial judge was in error in granting a nonsuit in the case in so far as the defendants Harry O. Henderson and Louisa P. Henderson are concerned and that the action as to these two defendants should be heard and decided upon its merits.

The judgment is therefore affirmed as to the defendants J. Lloyd Moore and Viola Moore and is reversed as to the defendants Harry O. Henderson and Louisa P. Henderson.